Bell Telephone Company of Philadelphia, Plff. in Err., *v.* Commonwealth ex rel. Baltimore & Ohio Telegraph Company.

A telephone company chartered under the act of April 29, 1874, and using patented devices for public purposes, under license from a foreign corporation, cannot discriminate against a telegraph company seeking to use its telephone system in the business of receiving and delivering telegraphic

messages, although the license from the foreign corporation contained a restriction against such use.

A peremptory writ of mandamus will be awarded by the court, although the licensor be not a party to the suit.

(Decided April 19, 1886.)

Error to the Common Pleas, No. 4, of Philadelphia County to review a judgment sustaining a demurrer to the return to an alternative writ of mandamus, and awarding a writ of peremptory mandamus. Affirmed.

An alternative writ of mandamus was issued in the name of the commonwealth, on the relation of the Baltimore & Ohio Telegraph Company, against the Bell Telephone Company of Philadelphia, respondent, to compel the latter company to furnish to the petitioners, at their office in Philadelphia, a telephone instrument and the necessary wires and service of the exchange, for the ordinary prosecution of their business and the delivery and reception of messages sent, or to be sent, by telegraph.

The return and amendment thereto, afterwards filed by the respondent to the alternative writ, alleged that their rights were derived from and subject to the limitations of a license granted by the National Bell Telephone Company, to whose rights the American Bell Telephone Company has succeeded, the latter being a corporation of the state of Massachusetts. The license was not set out in the return. The relator demurred to the return. The other facts appear by the following opinion of the court below, on demurrer to the return:

ARNOLD, J.:

The relator and respondent are Pennsylvania corporations, organized under the corporation act of 1874. The relator operates lines of telegraph, the respondent operates lines for the transmission of human speech by means of the telephone. It is averred by the relator and admitted by the respondent that the use of the telephone is a public necessity which no other human agency can supply. Consequently the telephone business is a public business. It is also averred that the respondent undertakes to serve the people of Philadelphia, without distinction of class or occupation, at an annual rental which is uniform to

all classes; that the relator, the Baltimore & Ohio Telegraph Company, has applied to the respondent for a telephone instrument and necessary connecting wires, and has offered to pay the usual rental therefor, and to comply with all the reasonable rules and regulations of the respondent; but that the respondent refuses to furnish to the relator a telephone for the purpose of receiving or delivering telegraph messages, although such service is simply in the ordinary line of the relator's business. To show that this refusal is an unjust and unreasonable discrimination against the Baltimore & Ohio Telegraph Company, it is averred that the respondent has placed an instrument in the office of the Western Union Telegraph Company, in the city of Philadelphia, and permits that company and its customers to use the telephone for the purpose of sending telegrams; and it is alleged that the permission thus enjoyed by the Western Union Telegraph Company, and the refusal to permit the Baltimore & Ohio Telegraph Company and its customers to enjoy the same privilege, is an unjust discrimination against them, and a violation of the duty of the respondent to serve the public indiscriminately.

The respondent, the Bell Telephone Company of Philadelphia, alleges that it is the licensee of the National Bell Telephone Company, to whose rights the American Bell Telephone Company has succeeded; and that the respondent is subject, in its dealings with the people of Philadelphia, to the terms of the contract under which said license was given; that the American Bell Telephone Company is now the owner of all the patents for the transmission of articulate speech by means of electricity; that there were at one time numerous suits pending between the National Bell Telephone Company and other parties in its interest, and the Western Union Telegraph Company and parties in its interest, involving conflicting claims to priority of invention and alleged infringement; and that in the year 1879 it was agreed in settlement of the litigation that the National Bell Telephone Company should acquire all the patents relating to telephones, but that the telephones, in the words of the agreement, "are not to be used for the transmission of general business messages, market quotations, or news for sale or publication in competition with the business of the Western Union Telegraph Company or with that of the Gold & Stock Telegraph Company; and the party of the second part (the

National Bell Telephone Company), so far as it lawfully and properly can prevent it, will not permit the transmission of such general business messages, market quotations, or news for sale or publication over lines owned by it or by corporations in which it owns a controlling interest, nor license the use of its telephones or patents for the transmission of such general business messages, market quotations, or news for sale or publication in competition with such telegraph business of the Western Union Telegraph Company or that of the Gold & Stock Telegraph Company.

"The party of the second part will fully license the party of the first part (the Western Union Telegraph Company) to use telephones procured from it for transmitting telegraph messages, etc.

"For the purposes and uses aforesaid, the party of the first part shall be furnished with telephones, with licenses from the party of the second part to use such telephones and other inventions owned or controlled by it, for use in connection with telephone lines on terms which may be established from time to time, and which shall be as favorable as those on which they are furnished to any other parties for like uses, and shall be allowed a discount as provided in article 2."

I have quoted literally from the agreement of 1879 for the purpose of showing that the Western Union Telegraph Company is not a patentee which has granted a license for a restricted use of its patents to the telephone company, reserving thereout a certain exclusive use to itself, as was contended on its behalf by the learned and able counsel of the respondent; but that it is a licensee paying to its licensor, as averred in the return, an additional compensation or royalty upon every message received or delivered by it, of which compensation or royalty only a small percentage is paid to the respondent, according to its averment. The agreement, it will be seen, provides for licenses from the telephone company, to the Western Union Telegraph Company, on terms to be established from time to time, which shall be as favorable to that telegraph company as to any other parties for like uses, thereby recognizing the duty of the respondent and its licensor to deal equally with all, and binding it to that duty by express contract. All the telephone patents, it is claimed for the respondent, are now owned by the American Bell Telephone Company; and no per-

son can use them except under contracts or licenses from that company. The Western Union Telegraph Company has given up its claims to all such patents, and the American Bell Telephone Company has put them into public use, and thereby subjected them to the rule that, when the use of a patented device is thrown open to the public, or to classes of the public, all are entitled to use it on the same terms as other persons in the same class. The rules which govern common carriers apply to it, and those rules prohibit any discrimination to be made. This is the rule of the common law as enforced in many adjudged cases, of which Sandford v. Catawissa, W. & E. R. Co. 24 Pa. 378, 64 Am. Dec. 667, may be referred to as a conspicuous and pertinent example. In that case it was decided that a contract giving to one express company an exclusive right of transportation in the passenger trains of the railroad company is illegal and void. The law on this subject is placed beyond successful dispute by the 3d clause of § 33 of the corporation act of 1874, which enacts that "the said telegraphic corporations shall  .  ᴖ  . receive despatches from and for other telegraph lines and corporations, and from and for any individual; and on payment of their usual charges to individuals for transmitting despatches, as established by the rates and regulations of such telegraph line, transmit the same with impartiality and good faith, under penalty of $100 for every neglect or refusal so to do," etc.

And that telephone companies are included within this clause is shown by the case of the Atty. Gen. v. Edison Teleph. Co. (1880) L. R. 6 Q. B. Div. 244, in which English statutes relating to telegraph companies enacted in the years 1863 and 1869, before the telephone was patented or, perhaps, invented, were held to apply to telephone companies. Besides, the respondent was chartered under the act of 1874, which gave it a legal existence and prescribed its duty at the same time. It cannot transact business in this state but for that act, and, operating under that act, it must deal equally with all, with impartiality and good faith, and without discrimination in favor of or against anyone.

The conclusion to which we have come by the foregoing reasoning is supported by the authority of several adjudged cases.

In the case of the State ex rel. American U. Teleg. Co. v. Bell Teleph. Co. (1880) 36 Ohio St. 296, an application was made to the supreme court of Ohio for a mandamus to compel

the Columbus Telephone Company to place a telephone in the office of the relators for the use of their telegraphic department. The American Bell Telephone Company, although a party, does not appear to have been served, nor did it join in the answer filed. The defense was that the license by the American to the Columbus Telephone Company contained the same restriction which is in controversy in this suit, that the Columbus Telephone Company would not permit the transmission of general business messages, market quotations, or news for sale or publication, and that it would turn over all such messages to the licensor, the American Bell Telephone Company, unless otherwise directed by its customers; but that it would not solicit such directions, nor receive pay for transmission over other lines, unless compelled by law to do so; thereby showing the doubt of the parties to the contract as to its validity. There is in Ohio a statute similar to our Pennsylvania statute, requiring telegraph companies to receive despatches from and for other companies and individuals, and to transmit the same with impartiality on payment of the usual charges. The court held that the contract to the effect that discriminations should be made between telegraph companies is void as against public policy as declared by the statute, and awarded the mandamus.

In the case of the American U. Teleg. Co. v. Bell Teleph. Co. (1880) 10 Cent. L. J. 438, and 11 Cent. L. J. 359, also in 22 Alb. L. J. 363, there were clauses in the license of the respondent which provided that its patrons should not use the telephone for transmitting messages for which toll was paid to anyone but the respondent, nor for transmitting market quotations or news for sale or publication; that it should not connect any of its offices with any telegraph office or line, and that no telegraph company should be allowed to become a subscriber. Judge THAYER held that this second clause would compel the respondent to discriminate against a class of individuals or corporations, which is contrary to law and public policy. A public servant cannot avoid the performance of any part of the duty it owes to the entire public, by a contract, even with the patentee of an invention. Doubtless a condition limiting the use which should be made of the telephone, affecting all classes of citizens and discriminating between none, might be valid; but, having the right to use the telephone, the relator might use it for the same purposes that other subscribers use it.

The principle was also enforced in the case of Louisville Transfer Co. v. American District Teleph. Co. (1881) 14 Chicago Legal News, 15, 24 Alb. L. J. 283. In that case the plaintiff carried on a passenger transfer business in public omnibuses and carriages, and the defendant operated a telephone exchange, and organized as a part of its business a system of public transfer by carriages and coupés. The defendant had placed a telephone in the plaintiff's office, and threatened to remove it; whereupon the plaintiff applied for an injunction. Chancellor EDWARDS held that, the defendant being engaged in two distinct employments, one the operating of a telephone exchange and the other a carriage service, there was no rivalry between the plaintiff and defendant in the telephone business, as to which the defendant occupied the same position towards the plaintiff as towards the rest of the public, and the defendant, being a quasi public servant, is bound to serve all alike and impartially, on the principles of the law of common carriers.

The last reported case in which the same conclusion was reached is that of Missouri *ex rel.* Baltimore & O. Teleg. Co. v. Bell Teleph. Co. (1885) 23 Fed. 539. It will be noticed that the plaintiff in that case is the plaintiff in the case now before us, and the defendant was in the same position as the defendant in this case, and it rested its defense on the same ground: A contract with the American Bell Telephone Company, that it would not establish telephonic connection with any telegraph company unless permitted by the American Bell Telephone Company. It also appeared that telephonic communication had been permitted to the Western Union Telegraph Company. Judge BREWER held that the telephone company having put its patents into public use, or the channels of commerce, as he expresses it, the property is put within the power of the court for enforcing the obligations of a common carrier. It is true the judgment was given by a divided court, but Judge TREAT placed his dissent on the ground that, the American Bell Telephone Company not being a party, in his opinion, a valid judgment could not be given.

The supreme court of Connecticut has decided the question the other way, notwithstanding there is a statute in that state, and also in Massachusetts, similar to those of Ohio and Pennsylvania. American Rapid Telegraph Co. v. Connecticut Teleph. Co. (1881) 49 Conn. 352, 44 Am. Rep. 237.

In the case before us the American Bell Telephone Company is not a party, and we do not think it indispensable that it should be. We are not called upon to expound or enforce the contract between that company and the Philadelphia company. What we are called upon to do is to declare that the illegal portions of their contract cannot be enforced in this state; that those portions are void and against public policy as declared, both by the common law, and by statute; and that the respondent cannot shield itself from the performance of its duty to serve the public impartially and without discrimination, by a contract with a party not within the state. We deal with parties carrying on a public business within our borders under the protection of our laws, to compel them to comply with our laws. They cannot obtain immunity from their obligation to treat all alike by pleading a license from parties beyond our grasp. The owner of a patent may put it in public use, or withhold it, as he chooses; but if he does put it in public use, then, as was well said by Chief Justice McIlvaine, of Ohio, "the manner of its use may be controlled and regulated by state laws when the public welfare requires it." The patent gives him a monopoly by protecting him from the competition of other persons in the business secured by the patent; but it does not permit him to make discriminations against persons who are willing to pay the same rates which other persons are charged for the use of it.

We say nothing now on the subject of charges by the respondent for the use of the telephone, except this: Whether it be by an annual rental, or a tariff of charges upon messages, it must be the same for all.

The demurrer is sustained and a writ of peremptory mandamus awarded.

The respondent took this writ, assigning for error the action of the court in sustaining the relator's demurrer to the respondent's return and in awarding a writ of peremptory mandamus commanding the respondent to furnish to the relator telephone instruments, wires, and service for the ordinary prosecution of the relator's business, and the delivery and reception of messages sent or to be sent by telegraph.

*Silas W. Pettit, John H. Read, Samuel B. Huey,* and *Wager Swayne,* for plaintiff in error.—The exclusiveness of the grant

of a patent is the gist of the act of Congress passed pursuant to the power given it in article 1, § 8, clause 9, of the Constitution and found in Revised Statutes, 4884 (U. S. Comp. Stat. 1901, p. 3381), for neither constitutional nor congressional legislation was needed to give to the inventor or his assigns the right to make, use, and vend his invention. Bloomer v. McQuewan, 14 How. 539, 549, 14 L. ed. 532, 537; Seymour v. McCormick, 16 How. 480–489, 14 L. ed. 1024–1028.

And this right is capable, not only of assignment as a whole, but of subdivision. Adams v. Burke, 17 Wall. 453, 21 L. ed. 700; Providence Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. ed. 566.

Where the right granted was to use the invention for the purpose of making articles appertaining to machinery, subject to certain limitations and qualifications, the Supreme Court of the United States sustained the right of such license, not only as against infringers, but as against the patentee, during the term for which the patent had been extended. M'Culloch v. Maryland, 4 Wheat. 426, 4 L. ed. 606; State Freight Tax Case, 15 Wall. 232, 21 L. ed. 146; Pennsylvania v. Wheeling & B. Bridge Co. 18 How. 430, 15 L. ed. 436; Cammeyer v. Newton, 94 U. S. 234, 24 L. ed. 75.

This has been fully recognized by this court. Haskell v. Jones, 86 Pa. 173, 175.

Acts of state legislation which interfere with the right of the patentee are unconstitutional. Woollen v. Banker, 2 Flipp. 33, Fed. Cas. 18,030; Hollida v. Hunt, 70 Ill. 109, 22 Am. Rep. 63; Crittenden v. White, 23 Minn. 24, 23 Am. Rep. 676; Cranson v. Smith, 37 Mich. 309, 26 Am. Rep. 514; Walter A. Wood Mowing & R. Mach. Co. v. Caldwell, 54 Ind. 270, 23 Am. Rep. 641; Castle v. Hutchinson, 25 Fed. 394.

A party engaged in a public employment no doubt is ordinarily responsible to the public for not providing himself with the means for discharging the public duty incident to his employment; but it would seem to be wholly at variance with every principle of law to hold that, when a party charged with a public duty is given by contract the limited use of the property of another, such property is released, by reason of such public duty of the bailee, from the limitations imposed upon its use by the bailor; e. g., that a stage coach proprietor cannot hire a

horse without being obliged to use him in his stage coaches, notwithstanding his agreement not to do so.

The principle of Patterson v. Kentucky, 97 U. S. 501, 24 L. ed. 1115, does not affect the question in this case. That was a case where the patented article was an explosive oil, and the statute under discussion was one regulating its manufacture, sale, and use, and was merely an exercise of the police power (see United States v. DeWitt, 9 Wall. 41, 19 L. ed. 593), subject to which, of necessity, all property is held. The legislation in question did not at all profess, or undertake, to affect the property right, of the patentee.

These considerations plainly distinguish this case from Sandford v. Catawissa, W. &. E. R. Co. 24 Pa. 378, 64 Am. Dec. 667, and that line of cases, cited and relied on by the learned court below, in which common carriers have attempted to disable themselves from serving the public generally by contracting to serve one or more individuals in particular.

The act of 1874, cited by the court, does not in fact apply to the question here presented. Its provisions as to the obligation to receive and transmit messages are in effect merely declaratory of the obligation imposed by the common law upon companies engaged in a public employment. The Western Union company, if it owned and operated the respondent's telephone lines and was a party defendant to this suit, could not be compelled to give the relator the service demanded, because a common carrier, while it is forbidden to discriminate between its customers, has still the right to use its business facilities for its own advantage, and is not obliged to give them to its rivals. Sargent v. Boston & L. R. Corp. 115 Mass. 416; The D. R. Martin, 11 Blatchf. 233, Fed. Cas. No. 1,030; Barney v. Oyster Bay & H. S. B. Co. 67 N. Y. 302, 23 Am. Rep. 115; Jencks v. Coleman, 2 Sumn. 221, Fed. Cas. No. 7,258. See, particularly, American Rapid Teleg. Co. v. Connecticut Teleph. Co. 49 Conn. 352, 44 Am. Rep. 237.

*N. Dubois Miller,* for defendant in error.—The return is demurrable because it did not set out the license of the American Bell Telephone Company to the respondent company. Tapping, Mandamus, 352; People *ex rel.* American C. R. Co. v. Ohio Grove Twp. 51 Ill. 195; Com. *ex rel.* Armstrong v. Allegheny County, 37 Pa. 277.

The respondent is subject to the control of the court; and no contract made in relation to the instruments used by a corporation engaged in a public business under the control of the court can curtail the measure of that corporation's obligations to the public whom it is bound to serve. It is admitted by the pleadings that the respondent is engaged in a business which is (1) a monopoly, (2) a public necessity, and (3) an exercise of the right of eminent domain. There is, therefore, no such difficulty as existed in the grain elevator cases (Munn v. Illinois, 94 U. S. 113, 24 L. ed. 77), in determining whether or not the respondent's business is subject to legislative or judicial control. Any one of the three characteristics which it is admitted that it possesses would justify such control. Cooley, Const. Lim. 737.

While the law recognizes the right of every individual or corporation engaged in a business which is the proper subject of legislative or judicial control to make any reasonable regulations for the transaction of its business, it has been invariably held that:

1. No rule or regulation is reasonable which does not afford to every member of a particular class in the community the same facilities and privileges as those enjoyed by any one member of the same class.

This rule has been enforced in the case of gaslight companies, upon the ground that their business is either legally or virtually a monopoly. Shepard v. Milwaukee Gaslight Co. 6 Wis. 539, 70 Am. Dec. 479; Gaslight Co. v. Colliday, 25 Md. 1; People ex rel. Kennedy v. Manhattan Gaslight Co. 45 Barb. 136; New Orleans Gaslight & Bkg. Co. v. Paulding, 12 Rob. (La.) 378.

In the case of railroad companies upon the same ground, as well as because they are in the exercise of the right of eminent domain. New England Exp. Co. v. Maine C. R. Co. 57 Me. 188, 2 Am. Rep. 31; McDuffee v. Portland & R. R. Co. 52 N. H. 430, 13 Am. Rep. 72; Chicago & N. W. R. Co. v. People, 56 Ill. 365, 8 Am. Rep. 690; Messenger v. Pennsylvania R. Co. 36 N. J. L. 407, 13 Am. Rep. 457; Sandford v. Catawissa, W. & E. R. Co. 24 Pa. 378, 64 Am. Dec. 667; Cumberland Valley R. Co.'s Appeal, 62 Pa. 218; Arnold v. Illinois C. R. Co. 83 Ill. 273, 25 Am. Rep. 383; Illinois C. R. Co. v. Johnson, 67 Ill. 314; Southern Exp. Co. v. St. Louis, I. M. & S. R. Co. 3

McCrary, 147, 10 Fed. 210; Hays v. Pennsylvania Co. 12 Fed. 309; Wells v. Oregon & C. R. Co. 18 Fed. 667; Fargo v. Redfield, 22 Blatchf. 527, 22 Fed. 373; St. Louis, I. M. & S. R. Co. v. Southern Exp. Co. 108 U. S. 24, 27 L. ed. 638, 2 Sup. Ct. Rep. 6.

And in the case of telephone companies themselves, upon the same general principles and from their analogy to the case of common carriers. State *ex rel.* Webster v. Nebraska Teleph. Co. 17 Neb. 126, 52 Am. Rep. 404, 22 N. W. 237.

In Louisville Transfer Co. v. American District Teleph. Co. 10 Chicago Legal News, 15, 24 Alb. L. J. 283, the Louisville Transfer Company was proprietor of public carriages, and the American District Telephone Company was not only a telephone company, but also the proprietor of public carriages. The American District Telephone Company attempted to withhold telephone privileges on the ground that the plaintiff was a rival, but the court distinguished between the two occupations, and, holding that as respects the telephone business they were not rivals, said: "The defendant is a quasi public servant, and as such is bound to serve the general public, including plaintiff, on reasonable terms, with impartiality; that defendant is governed by the principles of the law of common carriers." To the same effect is American U. Teleg. Co. v. Bell Teleph. Co. 10 Cent. L. J. 438, and 11 Cent. L. J. 359.

2. No contract or agreement made in contravention of the statutory law or the law of public policy, as declared by the courts, can defeat the rights of the public or any individual member of the public. Western U. Teleg. Co. v. Baltimore & O. Teleg. Co. 19 Fed. 660; New England Exp. Co. v. Maine C. R. Co. 57 Me. 188, 2 Am. Rep. 31; McDuffee v. Portland & R. R. Co. 52 N. H. 430, 13 Am. Rep. 72; Sandford v. Catawissa, W. & E. R. Co. 24 Pa. 378, 64 Am. Dec. 667; Shipper v. Pennsylvania R. Co. 47 Pa. 338; Chicago & N. W. R. Co. v. People, 56 Ill. 365, 8 Am. Rep. 690.

Respondents claim that they have themselves only limited rights in the telephone, all of which they freely give to the relator, as they do to every other member of the community, and the additional privileges which the relator seeks are not theirs to give; that the exclusive use of the telephone for the purposes for which the relator wants it has already been secured by the Western Union Telegraph Company.

No one will undertake to say that the laws which protect the patentee and his assignees in the full and absolute lawful enjoyment of their property can be wrested to enable the owner of a patent right to use it in any manner which, with respect to any other property, would be unlawful. Patterson v. Kentucky, 97 U. S. 501, 24 L. ed. 1115; Jordan v. Dayton, 4 Ohio, 295; State *ex rel.* American U. Teleg. Co. v. Bell Teleph. Co. 36 Ohio St. 296, 38 Am. Rep. 583.

The counsel for plaintiff in error insist that the Western Union Telegraph Company, being a party interested, is entitled to be heard, and then proceed to show that no decree could be made against it, if it were a party, because under the familiar doctrine of Sargent v. Boston & L. R. Corp. 115 Mass. 416, and kindred cases, it could refuse to extend to a rival special facilities or privileges.

This is not the first time that the question arising here has been tested. In State *ex rel.* American U. Teleg Co. v. Bell Teleph. Co. 36 Ohio St. 296, 38 Am. Rep. 583, where, it is true, a local statute requiring telegraph companies to receive and transmit despatches from and for every other telegraph line, in terms included telephone companies also, the respondents, on the return to an alternative mandamus, set up the same contract and similar restrictions in the license; but the peremptory mandamus was awarded, the court observing: "While it is true that letters patent secure a monopoly in the thing patented, so that the right to make, vend, or use the same is vested exclusively in the patentee, his heirs, and assigns, for a limited period, it is not true that a right to make, vend, or use the same in a manner which would be unlawful, except for the letters patent, thereby becomes lawful under the act of Congress, and beyond the power of the states to regulate or control. . . . The property of an inventor in a patented machine, like all other property, remains subject to the paramount claims of society; and the manner of its use may be controlled and regulated by state laws, when the public welfare requires it."

In Missouri *ex rel.* Baltimore & O. Teleg. Co. v. Bell Teleph. Co. (1885) 23 Fed. 539, the same question again arose, and BREWER, Jr., said: "Notwithstanding this licensor has given to the licensee the right to establish a telephonic system in the city of St. Louis, with telephonic communication with only certain prescribed telegraph systems, the moment it permitted the

establishment of a telephonic system here, that moment it put such telephonic system within the control of the state of Missouri, and the control of the courts enforcing the obligations of a common carrier."

The court can make a decree without having the parent company before it as a party. In State *ex rel.* Curtis v. McCullough, 3 Nev. 202, the relator claimed to be the superintendent of the Overman Silver Mining Company, a corporation of the state of California. The respondent, who made a similar claim, set up as a defense that the court had no jurisdiction because the corporation was a foreign one, and the right sought to be enforced was derived from it. Lewis, J., said: "The court has complete jurisdiction of the parties, and the power to determine which of them has the right to the position claimed by the relator. Why, then, may it not afford the relator the relief to which he shows himself entitled. Admitted that the court has no jurisdiction of the corporation; but it has of the relator, who claims the enjoyment of certain rights acquired from the corporation. No judgment can be rendered here which will bind the corporation; this proceeding is simply between individuals over whom the courts of this state have jurisdiction, but who claim their rights from a foreign corporation. The source from whence they derive their rights is a matter of no consequence, if the court has jurisdiction of the individuals."

Telephone companies are within the 33d section of the act of 1874, prohibiting discrimination by telegraph companies. They are within the English telegraph acts. Atty. Gen. v. Edison. Teleph. Co. L. R. 6 Q. B. Div. 244.

Per Curiam:

We have carefully examined the record in this case, and have given due consideration to the able argument of the counsel for the plaintiff in error; yet we are not able to discover any error in the conclusion at which the learned judge arrived. His opinion contains a correct statement of the law, and vindicates the judgment.

Judgment affirmed.