# Perry County Telephone & Telegraph Co., Appellant, v. Public Service Commission.

*Constitutional law—Telephone company—Corporations—Refusal to permit extension of lines.*

1. The Public Service Commission has jurisdiction in the exercise of due discretion to refuse a petition of a telephone company to extend its lines into a district served by another company.

2. In such a case the petitioner is not denied any constitutional right under Section 12, Article XVI, of the Constitution which provides that "any association or corporation organized for the purpose or any individual shall have the right to construct and maintain lines of telegraph within this State, and to connect the same with other lines; and the general assembly shall by a general law of uniform operation provide reasonable regulations to give full effect to this section."

Argued May 12, 1919. Appeal, No. 276, Jan. T., 1919, by plaintiff, from judgment of Superior Ct., March T., 1918, No. 10, affirming order of Public Service Commission, Application Docket No. 219, 1919, refusing extensions in the case of Perry County Telephone and Telegraph Co. v. Public Service Commission. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

See 69 Pa. Superior Ct. 529. ‒

Petition for certificate of public convenience.

The Superior Court affirmed the order of the Public Service Commission. The Perry County Telephone & Telegraph Company appealed.

*Error assigned* was the judgment of the Superior Court.

*W. H. Sponsler,* with him *Jas. W. Shull,* for appellant.

*Berne H. Evans,* with him *John Fox Weiss,* for appellee.

OPINION BY MR. JUSTICE FRAZER, June 21, 1919:

The Perry County Telephone & Telegraph Company was incorporated under the general Corporation Act of April 29, 1874, P. L. 73, with authority to locate its lines over certain designated routes in Perry County. In 1915, desiring to extend its lines, application was made for amendment to its charter, specifying a number of additional routes and connections. The application was approved by the secretary of the Commonwealth, whereupon the Public Service Commission was petitioned for its consent and for a certificate of public convenience, as required by Section 18 of the Public Service Company Act of July 26, 1913, P. L. 1374. Objection to several routes named in the amended charter was made by the Cumberland Valley Telephone Company, alleging

the latter company was at the time adequately serving the public in the particular localities named, and that the establishing of a competing line would retard, rather than promote, the convenience of the public, and impose the additional burdens of duplication of systems. After hearing before the commission, a certificate was refused with leave, however, to petitioner to amend by striking out two described routes the commission found would result in a duplication of system, without means of communication between them. On appeal to the Superior Court the order of the Public Service Commission was affirmed, whereupon an appeal was allowed to this court to consider the constitutional question raised, whether the Public Service Commission has authority, in effect, to create a monopoly by refusing to permit the establishment of competing lines in designated territory.

Appellant contends the conclusion reached by the Public Service Commission and the Superior Court is inconsistent with the general policy indicated in Article XVI, Section 12, and Article XVII, Section 4, of the Constitution, prohibiting the consolidation of telegraph, railroad and canal companies, thus indicating an intent to maintain open and free competition in rates and facilities. The latter article relates to "railroads and canals" only and section 4 provides, in substance, that no railroad, canal or other corporation shall consolidate with or in any way control a parallel or competing line and must, therefore, be limited in its application to companies mentioned. This section has been construed not to include street railway companies: Gyger v. Phila. City Pass. Ry. Co., 136 Pa. 96. While the section is relied upon by appellant merely for the purpose of indicating a general policy established for the control of means of public transportation or communication, the two facilities are so entirely distinct that little help can be derived from a further reference to this provision, especially when we find in another section of the Constitution express provision governing telegraph companies.

Article XVI of the Constitution relates in general to private corporations and provides, in section 12, that "any association or corporation organized for the purpose, or any individual, shall have the right to construct and maintain lines of telegraph within this State, and to connect the same with other lines and the general assembly shall, by general law of uniform operation, provide reasonable regulations to give full effect to this section. No telegraph company shall consolidate with, or hold a controlling interest in the stock or bonds of, any other telegraph company owning a competing line, or acquire, by purchase or otherwise, any other competing line of telegraph." Appellant seems to concede that a telephone company is a telegraph company within the meaning of this section: Peoples Telephone & Telegraph Co. v. Berks & Dauphin Turnpike Rd., 199 Pa. 411; Bell Tel. Co. v. Com., 2 Sadler 299; Cochranton Tel. Co. v. Petroleum Telephone Company et al., 263 Pa. 506. The right given to a corporation or individual to construct and maintain lines and connect the same with other lines is thus made expressly subject to such reasonable regulations as the legislature may provide, consequently, it cannot be successfully argued that the right to construct a line is absolute, regardless of conditions or circumstances in the locality to be served. The constitutional provision in question also gives an association or individual the right to connect their lines with other lines, and, notwithstanding this privilege, plaintiff has successfully resisted an attempt on behalf of the Cumberland Valley Telephone Company to make such connection with its line. An argument or theory used by plaintiff in support of its contention in the proceedings referred to would be equally applicable here against the position it now assumes. Grants and franchises, especially those quasi-public in their nature, are to be strictly construed in favor of the Commonwealth and against the grantee, inasmuch as they are in derogation of the common law rights of individuals. In Penna. R. R. Co. v. Canal Commissioners,

21 Pa. 9, page 22, this court said: "But corporate powers can never be created by implication nor extended by construction. No privilege is granted unless it be expressed in plain and unequivocal words, testifying the intention of the legislature in a manner too plain to be misunderstood. When the State means to clothe a corporate body with a portion of her own sovereignty, and to disarm herself to that extent of the powers which belong to her, it is so easy to say so that we will never believe it to be meant when it is not said." And in American Transfer Co.'s Petition, 237 Pa. 241, it was said in an opinion of the lower court, affirmed by this court (page 245): "'Grants of franchises are usually prepared by those interested in them and submitted to the legislatures with a view to obtain the most liberal grant obtainable, and for this and other reasons such grants should be in plain language, certain, definite in nature, and contain no ambiguity in their terms, and will be strictly construed against the grantee': Cleveland Electric Ry. Co. v. Cleveland, 204 U. S. 116; Blair v. Chicago, 201 U. S. 400. 'It is a general rule that "every public grant of property or of privileges or franchises, if ambiguous, is to be construed against the grantee and in favor of the public"': 1 Cook on Corporations (6th edition, section 2); Knoxville Water Co. v. Knoxville, 200 U. S. 22."

While the language quoted was applied in cases where the question was one of construction of corporate franchises under statutory provision, the general principles governing the construction of statutes apply also to the interpretation of constitutions: 12 Corpus Juris 699; Booth & Flinn, Ltd., v. Miller, 237 Pa. 297, 306.

The provision in question, it will be observed, while not self-executing, is subject to "reasonable regulations" to be fixed by the legislature. Although it would be the duty of this court to declare invalid as unreasonable a regulation clearly violating rights expressly granted, yet the express power thus given the legislature to impose conditions upon the granting and use of a public

franchise will not be interfered with merely because of an unexpressed general policy or spirit supposed to underlie and pervade the Constitution. Although in a sense refusal to permit the construction of a competing line may be conceded as creating a monopoly and thus defeats the purpose the framers of the Constitution evidently had in mind in prohibiting the consolidation of competing telegraph lines and railroads, nevertheless, before reaching a conclusion on this question, consideration of other matters directly affecting the decision becomes important, to wit, the burden necessarily following from the maintenance by the public of dual systems to provide facilities which, in their very nature, are monopolies, and also the existence of legislation conferring upon a public body the power to inquire into and regulate rates alleged to be excessive, thus removing danger of evils experience has taught generally result from a monopoly in the supply of a particular commodity to the public.  Competition may be and is very desirable in many lines of business; there are, however, a number of quasi-public enterprises which may be classified as natural monopolies where the duplication of facilities merely results in the placing of an additional burden upon the public by forcing patrons to maintain two systems where one would serve the purpose as effectually and at less cost.  In this class may be placed the furnishing of gas, water, electricity and telephone service to the public.  The argument that competition between rival facilities serves to reduce the price to the consumer is not sustainable logically.  The duplication of water systems, for instance, means the expenditure of a large amount of money in the construction of reservoirs, laying of pipes, etc., in turn involving duplication of inconvenience to the public in tearing up streets and making excavations without proportionate benefits.  The duplication of telephone systems in a given locality without connection between their lines requires subscribers to install both systems and pay for double service to reach

subscribers on but one of the two systems. Or, as frequently happens, subscribers maintain both systems when they can reach other users with equal facility on either system. It is useless to argue that the cost of construction of such duplicate system is paid by investors, and the risk of financial failure is theirs since the burden of finally paying the carrying charges, and income to the investors is imposed upon the public with the result that a higher charge on the part of each competing company becomes necessary, due to the division of the patronage of the public. This is especially true in the smaller cities and country districts where the public to be served is limited in numbers. To hold, therefore, that public policy, as indicated by the section of the Constitution in question, was intended to permit the construction of competing lines under any and all conditions without inquiry into the character of the territory to be served and the existence in the locality of facilities adequate to accommodate the public, would amount to a destruction of the very object the policy is designed to establish.

In passing the Public Service Company Law of 1913, the legislature apparently had in mind the fact that with respect to certain public service facilities the construction of competing lines must, at times, tend to impose additional burdens on the public without proportionate benefits and, accordingly, placed on telephone companies the duty of transmitting messages without unreasonable interruption or delay and also the further duty of making connection with the lines of other companies for the interchange of conversation at such times and places as it could be done conveniently, without injury to the other company, and when necessity existed for such union. Article V, section 9, of the act contains a similar provision investing the Public Service Commission with power to require connection of systems and facilities. By another section the commission is authorized to inquire into and regulate rates charged by public service companies. We thus have express legislative provisions

for preventing undue burdens being imposed upon the public in the way of excessive rates by companies having no competition in districts supplied by them; consequently, we cannot say a refusal by the Public Service Commission to approve an application for the construction of a competing telephone system in a district already served at rates the commission has full power to control, and when practically the sole result of such additional system would be the duplication of maintenance charges the public must ultimately bear, is an "unreasonable regulation" within the meaning of the Constitution. No policy of the Constitution is violated by the statute, and, furthermore, the basis of the action of the commission is the interest of the public as distinguished from the interest of the corporation or individual making the application.

The judgment of the Superior Court is affirmed, and the appeal is dismissed at the cost of appellant.