## Records of Illegitimate Births

RENO, Attorney General, September 5, 1939.—We have your request to be advised whether your department is authorized to issue certified copies of records of births of illegitimates to the district attorneys of the various counties who have requested said certificates for the purpose of using them as evidence, on behalf of the Commonwealth, in criminal prosecutions.

Your question involves a consideration of the provisions of section 7 of the Act of April 22, 1937, P. L. 399, amending section 21 of the Act of June 7, 1915, P. L. 900, as amended, which provides as follows:

"The Department of Health shall, upon request *and the payment of the fee as hereinafter provided,* furnish any applicant a certified copy of the record of any birth, death, or marriage registered under provisions of this act: *Provided, however, That no certified copy of an illegitimate birth record, nor any information relative thereto, except as herein otherwise provided, shall be furnished to any person other than the illegitimate child or the mother of the child, or upon an order of a court of competent jurisdiction.*" (Italics supplied.)

The act is regulatory and restrictive of the powers of the Department of Health, an administrative department of the State Government. It is, therefore, a restriction on the powers of the Commonwealth with reference to the particular subject matter of the act. Its provisions are mandatory, not merely directory, since the word "shall" is employed in the act both in the part which imposes the duty to issue certified copies of births and in the part prohibiting the issuance of certified copies of illegitimate birth records.

That part of section 7 quoted above and italicized by us is, both by reason of its express language and by its content, a "proviso" and, as such, in accordance with well-established canons of statutory construction, must be strictly construed.

In defining the nature and office of a proviso, the Supreme Court, in Friese's Estate, 317 Pa. 86, 89 (1934), states as follows:

"The office of a proviso is to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation."

In Montgomery, Jr., v. Martin et al., 294 Pa. 25, 32 (1928), the court expounded the rule governing the construction of a proviso in the following language:

"The office of a proviso is to 'qualify, restrain, or otherwise modify the general language of an enacting clause'. A proviso 'is to be strictly [not liberally] construed' (U. S. v. Dickinson, 40 U. S. 141, 164; Ryan v. Carter, 93 U. S. 78, 83), and 'can have no existence separate and apart from the provision which it is designed to limit or qualify'. These are not technical but common sense rules, applicable to the interpretation of any written instrument; they govern the construction of constitutional provisions as well as of statutes. See Endlich on the Interpretation of Statutes, sections 184, 186 and 526; see also Booth & Flinn v. Miller, 237 Pa. 297, 306, and Perry County T. & T. Co. v. Pub. Serv. Comm., 265 Pa. 274, 278, on the rule that 'general principles governing the construction of statutes apply also to the interpretation of constitutions'."

In Orlosky v. Haskell, 304 Pa. 57, 62 (1931), the Supreme Court held as follows:

"There are certain canons of construction of statutes expressed as follows: 'The legislature must be intended to mean what it has plainly expressed, . . . It matters not, in such a case, what the consequences may be. . . . Where, by the use of clear and unequivocal language, capable of only one meaning, anything is enacted by the legislature, it must be enforced, even though it be absurd or mischievous. If the words go beyond what was probably the intention, effect must nevertheless be given to them. . . . Its [the court's] duty is not to make the law reasonable, but to expound it as it stands, according to the real sense of the words': Endlich's Interpretation of Statutes, section 4 (citing cases). . . . 'As the natural and appropriate office of a proviso is to restrain or qualify some preceding matter, it should be confined to what precedes, unless it is clear that it was intended to apply to subsequent matter. And, as a general rule, a proviso is deemed to apply only to the immediate preceding clause or provision': 25 R. C. L., page 985."

Quoting directly and more extensively from Endlich on Interpretation of Statutes, sec. 526, page 741, we find the following clear and explicit language covering the interpretation and effect of a proviso, such as that contained in the section of the Act of 1937 which we are here considering:

"And, where a provision, general in its language and objects, is followed by a proviso, the rule applicable to such cases occurring in statutes has been applied to constitutions, viz.; that the proviso is to be strictly construed, as taking no case out of the provision that does not fairly fall within the terms of the proviso, the latter being understood as carving out of the provision only specified exception, within the words as well as within the reason of the former."

The rule of statutory construction expounded by the court in the cases quoted above is restated in section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, as follows:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

From all the above-quoted authorities, and in view of the clear, precise and unambiguous language of the act, there is no doubt in our mind that the provisions of section 21 of the Act of June 7, 1915, P. L. 900, as amended, are applicable to district attorneys and all other officials of the Commonwealth. If the legislature had intended that such records were to be available to the Commonwealth or any of its officers, such as district attorneys and others, it would have included them in the exception. Since the legislature did not include the Commonwealth or any of its officers within the exception, we must conclude that it meant the provisions of said act to apply even to the Commonwealth and its officers.

It is our opinion, therefore, and you are so advised, that certified copies of illegitimate birth records may

and shall only be issued to the illegitimate child or its mother, or upon the order of a court of competent jurisdiction.