Modern Transfer Co., Inc., Appellant, *v.*
Pennsylvania Public Utility Commission et al.

Reading Company et al., Appellants, *v.* Same.

198

Argued September 27, 1939.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*Richard V. Zug*, with him *Harold S. Shertz*, for appellant and intervening appellant, No. 127.

*John B. Gest*, with him *George C. Doering* and *C. T. Wolfe*, for appellants, No. 128.

*E. Mode Vale*, for intervening appellant, No. 127.

*William J. Wilcox*, for intervening appellants, No. 127.

*Herbert B. Cohen*, with him *Spencer R. Liverant*, for intervening appellant, Nos. 127 and 128.

*Lester Lichtenstein*, for intervening appellants, No. 127.

*Solomon Freedman,* with him *Harry H. Frank* and *Harry M. Showalter,* for appellee.

*Robert C. Fluhrer,* with him *Thomas R. Wickersham,* for intervening appellee, Nos. 127 and 128.

*W. S. T. Hurlock, Jr.,* of *Nauman, Smith & Hurlock,* for interested party under Rule 61.

OPINION BY PARKER, J., January 30, 1940:

Modern Transfer Company, Inc., by one appeal, and Reading Company and Reading Transportation Company, by another appeal, challenge the validity of an order of the Public Utility Commission "consolidating and coordinating" previous existing certificates of public convenience authorizing the York Motor Express Company (hereafter referred to as York Motor) to transport freight by truck on certain public highways. As each appeal involves the same order and the same facts, they will be considered in one opinion. The order of the commission is attacked on the grounds that the evidence is not sufficient to support the order and that it is arbitrary, capricious, unreasonable, and contrary to law. The order of the commission, with some modification, must be sustained.

Prior to July 15, 1937, York Motor held a number of certificates authorizing it to carry intrastate freight by truck on highways in the southeastern section of Pennsylvania, and it was also operating as a carrier of interstate freight. The various intrastate routes radiated from York, Pennsylvania, where it maintained its headquarters. The certificates granted, with some limitations, privileges which are described as "Class A" and "Class D" rights as those terms are used in General Order No. 29 of the Public Utility Commission. A certificate for "Class A" rights permits "the certificate holder to transport between any two points on the route described, and excludes transportation between points

within a borough or city," while a certificate for "Class D" rights permits "the carrier to transport only between those points specified in the certificate."

The "Class A" certificates of York Motor embraced routes starting in York and Adams County south of York and extending through that city in a northerly direction by different but definite courses to York Haven and to Harrisburg, and from York in an easterly direction through Columbia, Lancaster, and Coatesville to Philadelphia by Highway Route No. 30, the certificate being made subject to certain restrictions as to transporting freight between local points, which restrictions are not at present of importance.

The "Class D" certificates covered routes extending from Littlestown, Adams County, to York; from York to Harrisburg; from York to Lancaster; from Harrisburg by Route No. 422 to Lebanon and Reading, and thence by Route No. 222 to Allentown, Bethlehem, Easton, and certain smaller places in that vicinity; from Lancaster by Route No. 222 to Ephrata, Reading, Kutztown, Allentown, Bethlehem, Easton, and smaller places in that vicinity; and several routes between Lancaster and Lebanon.

These orders of the commission authorized the carrying of freight from points in Adams and York Counties, to points on the routes designated 'in such "Class D" certificates and in the opposite direction. This description of the rights held by York Motor is not intended to describe its activities precisely or in detail or in all of its ramifications, but only to show the general situation prior to the order appealed from.

In July, 1937, York Motor applied to the commission "to coordinate and consolidate" all its routes "so as to permit the transportation of freight and merchandise from any and all points on one route to any and all points on any other route and to serve all points on the same route." A number of competing utilities were permitted to intervene as objectors. The commission,

subject to certain definitions and limitations, granted, after hearings, the prayer of York Motor, whereupon an appeal was taken to this court. Before argument the record was returned to the commission at its request when, after hearing, the commission reaffirmed its former order but further defined what it meant by "coordination and consolidation." From the latter order these appeals were taken and various interested carriers have intervened as appellants and appellee.

The net effect of the new order was not to extend the area of operations but to substantially enlarge York Motor's rights in respect to routes over which it was then operating between points in Adams and York Counties and points north of Harrisburg, Lancaster, and Philadelphia where it formerly possessed "D" rights, and to grant additional rights between the larger centers which were specifically named in the former certificates as points to and from which it was permitted to operate. The appellants contend in general that the evidence was not sufficient to form a proper basis for the grant of any additional rights and, specifically, that that portion of the order which authorized York Motor "to transport property from any and all points on one route to any and all points on any other route hereinbefore set forth" was arbitrary, capricious, and unreasonable insofar as it granted the right to transport freight between Philadelphia and Allentown, Bethlehem, Easton, and places in the vicinity of the last named cities and the right to transport freight between Lancaster and Harrisburg via York or Lebanon.

The object of the commission in making the order which it did on July 5, 1938, was to coordinate and consolidate rights which that utility formerly possessed. We are of the opinion that, in respect of the main objects accomplished and rights granted, the evidence was sufficient to support the order. By its order as limited and explained by the supplemental order, York Motor was not given unlimited rights to transport freight be-

tween all points on all routes over which it was formerly operating, for the commission substantially circumscribed and limited such rights. While we are in accord with the general purpose of the commission we think that there should have been a further limitation.

That there is a reasonable demand for truck service in the field of York Motor's operations is clear. That company was operating a large fleet of motor cars and a number of terminals in the southeastern part of Pennsylvania, it being one of the largest truckers in the Commonwealth, and it enjoyed, according to the testimony, an enviable reputation for efficient service. A large number of utilities are operating in the same territory. These facts alone show the need for some service. It follows that the real problem presented to the commission was how the right to serve the public should be distributed among the various available carriers. "We have frequently stated that the extent to which there shall be competition in the intrastate transportation of freight and merchandise by common carrier is largely a matter of policy which the legislature committed to the Public Service Commission, and has now committed to the Public Utility Commission, and that the question is, for the most part, an administrative one which must be left to the sound judgment and discretion of the commission, and that its decision, if based on competent and relevant evidence, will not be disturbed by this court unless it is so capricious, arbitrary, or unreasonable as to amount to error of law or a violation of constitutional rights": *John Benkart & Sons Co. v. P. U. C.,* 137 Pa. Superior Ct. 13, 17, 7 A. 2d 588. "The basis of the action of the commission is the interest of the public as distinguished from the interest of the corporation or individual making the application": *Perry Co. Tel. & Tel. Co. v. P. S. C.,* 265 Pa. 274, 281, 108 A. 659; to which we may add, or the interest of competing carriers. "The question is not whether the granting of the application will be for the convenience and accommoda-

tion of some of the public, but whether it will be for the convenience, accommodation and advantage of the public generally and considered as a whole": *Beaver Valley Serv. Co. v. P. S. C.,* 122 Pa. Superior Ct. 221, 225, 186 A. 304.

The public are interested in obtaining not only an economical but a dependable service, and carriers cannot continue indefinitely to serve the public at a loss. It is the duty of the commission to adjust conflicting interests so that efficient service will be available. The proper adjustments are to be made by the commission, for it is to that body that the legislature has entrusted the duty of determining who and how many shall serve a given area. It requires proof of an unusual situation before we are warranted in interfering with the duties so entrusted to the commission.

In addition to evidence of the services which are furnished by truckers and railroads in the territory affected, we have testimony as to the demand for such service from many shippers and several agents of utilities which agents had made a study of the needs of the particular section. Such testimony indicates some demand and need for additional service. At least there was sufficient evidence from which the commission might find such to be the case. The order of the commission has not extended the area of operations of the particular carrier but has permitted it to serve persons whose doors this utility passed in its former operations and has permitted the carrier to give additional service within the same area and on the same routes to those at whose doors they were actually stopping but whose demands they could only satisfy in part. Some shippers so affected testified that it would promote economies in their operations to have more of their business handled by York Motor so that they would not be compelled to patronize so many different carriers.

Complaint is made that the commission received incompetent and hearsay evidence in support of this

branch of the case, particular stress being laid on the receipt of the testimony of agents of York Motor who testified as to requests to the utility for the service proposed to be rendered by the utility and who furnished a lengthy list of the particular firms and persons who were asking for such service. We do not agree with the appellant that such testimony should have been excluded as hearsay. Need for service may be evidenced in part by the demands of the public for such service and when the agent testified to the large number of persons who were demanding such service and named the applicants, he was testifying to relevant and material facts. Such testimony is not to be excluded as hearsay. As to such matters, a mere expression of opinion or the statement of a conclusion without supporting data would have very slight probative value, but when supported by evidence showing the basis of and warranting the conclusion reached it should have much weight. We should have more of such evidence and less evidence consisting of unsupported conclusions. When the problem is as to the extent of service necessary to supply the demands of the public, the testimony of one small or occasional shipper as to his needs is not of much value, but when we find nineteen or more persons testifying as to the same needs such evidence is entitled to weight. It seems clear to us that the evidence was sufficient to support the general conclusion of the commission that the public interest warranted a coordination and extension of this utility's rights. We have no doubt the commission gave due weight to the fact that York Motor was passing many points where at little additional cost it might furnish more service at less average cost and at the same time accommodate the public. To promote such economies is one of the duties of the commission. The only question remaining is whether the commission, in the light of the facts shown, should not have limited in certain cases the coordination which it attempted to accomplish.

That part of the order which permits York Motor to transport freight between Philadelphia and Allentown and other places in that vicinity presents a special problem and different circumstances. On this branch of the case it appears that by the last order York Motor may only transport between these terminals by Route No. 30 from Philadelphia to Lancaster, thence by Route No. 222 through Reading to Allentown, and from there to other cities and villages in that immediate locality, and that it may also transport by the same route in the opposite direction between the same terminals. While the direct route by improved highways from Philadelphia to Allentown is shown to be 53 miles and from Philadelphia to Easton 54 miles, the distance by the route proposed to be followed by this order would be about 150 miles, or almost three times as far. The Philadelphia and Bethlehem localities are large industrial centers and the shippers at each of these points are now supplied with service by railways with door to door pick-up and delivery service and by truckers.

This commission itself had occasion at the very time this application was pending to investigate the need for additional service and concluded that there was then an adequate service between these shipping points. On January 25, 1938, while this matter was pending the commission dismissed an application of John Southwick (17 Pa. P. U. C. 637) where the applicant had requested the right to serve as a common carrier for the transportation of freight between Philadelphia and Allentown, Bethlehem, and Easton, and the commission carefully considered the adequacy of the service then being furnished. Subsequently, on March 28, 1938, the commission had before it an application by Fred Erb & Son (18 Pa. P. U. C. 125), who were then furnishing limited service between Philadelphia and Allentown, for permission to serve the public generally between those points. The application was refused and the comments of the commission show its conclusions

as to the necessity for service between those places in this language: "This Commission, and its predecessor, have commented favorably several times upon the character and adequacy of the transportation in this area. Several applications by persons desiring to enter this area as common carriers have been refused. The application of the Reading Transportation Company to furnish trucking service along the rail lines of an affiliate, the Reading Company, between Philadelphia, Allentown and Bethlehem, was dismissed and as recently as January 25, 1938, this Commission, in the application of John Southwick, 17 Pa. P. U. C. 637, refused to authorize trucking service in this area. In that application we said: 'Before the Commission may approve an application for right to furnish trucking service it must find that such approval is necessary and proper for the service, accommodation and convenience of the public or, in other words, that the public convenience and necessity requires the proposed operations of the applicant. When a certificate is sought for authority to engage in transportation of property generally and to serve a public already served by railroad and motor carriers the duty is upon the applicant to show that the existing service is not of a type or character which satisfies the public need and convenience and that the proposed service would tend to correct or substantially improve that condition.' ...... From the facts presented to us in this record we find that the creation of further competition between authorized carriers in this area by the granting of this application would result only in unnecessary and destructive competition and would be contrary to the interests of the public. The present applicant has presented no facts upon which we might arrive at a conclusion other than that the present facilities in this area are adequate to serve the needs of the public." An examination of the testimony in this case and in those cases will not warrant the statement that a different state of facts was shown to

exist by the applicants in the different cases, with respect to the adequacy of existing service. The commission may have had additional reasons for refusing these applications but it there found the facts with reference to the need for additional service at the time involved in this proceeding.

While the action of the commission in a number of cases in which it found that the service was adequate between Philadelphia and the Allentown section casts serious doubt on the validity of the present order insofar as it concerns need for the service to be rendered there, this appeal must be disposed of on its own facts. The commission might be correct in this case and wrong in the others. We will therefore direct our attention to the facts shown in the record in this case. While we recognize the force to be given to the findings of a tribunal to which has been delegated by the constitution or the legislature the responsibility for determining questions of fact and, particularly, the pertinent provisions of §1107 of the Public Utility Law (Act May 28, 1937, P. L. 1053; 66 PS §1437) prescribing our powers on appeal, nevertheless the comment of the Supreme Court in *Consolidated Edison Co. v. National L. R. Board*, 305 U. S. 197, 229, 230, 59 S. Ct. 206, where a comparable situation was presented and the duties of quasi judicial tribunals were being considered, is pertinent to the question now being examined. That court said: "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion ...... But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force." Our inquiry is therefore whether there is any substantial evidence with rational probative force supporting the findings.

We have searched the record in vain for evidence sufficient to sustain a conclusion that the present facil-

ities were not adequate to accommodate the public The most that can be said for the testimony in this respect is that it shows a need for service between the respective areas while the question involved is whether there is now sufficient service to accommodate the public. In some isolated cases there were complaints as to the manner in which some particular utility had served that shipper, but there were still other carriers available which held certificates. When we analyze the testimony of the shippers we find that in many instances the shipper merely inquired whether York Motor could furnish service from Philadelphia to Allentown, Bethlehem, or Easton. Such evidence would certainly not lead a reasonable mind to conclude that an uneconomical service wasting about 100 miles of travel in reaching a point distant 53 miles was warranted when at the same time the commission was refusing to permit additional persons to operate over the direct route on the ground that the existing service was adequate.

The Public Utility Law is broader in its scope than the Public Service Company Law which it replaced. The old law was limited to the regulation of public utilities while the present law exercises control over other users of the public highways and is intended to place limitations on the use of such highways by all classes of carriers of freight and passengers. In so acting the legislature undertook not only to regulate utilities but, under its police power, to regulate the use of the highways. It is generally recognized that the highways are now crowded in the more densely populated sections and the public are interested in making the best use of those highways. Consequently, it is to the interest of the public that a truck should not spend an unreasonable time on the highways by traveling 150 miles when the same destination can be reached in 53 miles. The public have an interest in the economical use of their highways as well as other economies. Not only do we fail to find facts supporting the commis-

sion's conclusion in this respect, but we can not see the portion of its order we have been last considering as other than an arbitrary, capricious, and unreasonable exercise of its powers. We fully appreciate the enormous task imposed upon the commission in regulating carriers and we have no desire to usurp the functions of the commission in determining what and how many carriers shall perform trucking service, but this seems to us to be a typical case of a usurpation of power probably brought about in the haste necessary in considering the large number of cases presented.

The same complaint is made with reference to that part of the order which permits York Motor to transport freight between Harrisburg and Lancaster via York or Lebanon when there is a shorter and direct route from Harrisburg to Lancaster. There are points of similarity between the Harrisburg-Lancaster situation and that disclosed between Philadelphia and Allentown, but there are likewise a number of distinguishing circumstances. York Motor had much broader rights as to serving intermediate points between York and Lancaster, York and Harrisburg, and Lancaster and Lebanon; the distances are less, and the stops are necessarily much more frequent in the Lancaster-Harrisburg route. These and other circumstances are such that we do not feel that we can, say as a matter of law that the proposed hauls by the circuitous routes are here necessarily uneconomical. We cannot say that in every case the commission must only permit a haul between two points by the shortest route. In fact, some of the objectors in the present case are exercising just such privileges. To adopt such a principle would be ridiculous and would be contrary to the results frequently reached in transportation cases, particularly by rail. Lebanon, Lancaster, York, and Harrisburg and intermediate points constitute a contiguous territory and we can well see that the commission might feel that it was unreasonable to prescribe the shortest course that could be fol-

lowed in serving this community. It might on one occasion be advisable to follow one course and at another time to follow a different way. To lay down such a rule would be much like attempting to prescribe what course a trucker should follow who had the right to transport freight within the city of Philadelphia. After a careful examination of all the testimony in the case, we feel that we are not justified in saying as a matter of law that the action of the commission in permitting this carrier to accommodate some of its customers by hauling freight over the routes here prescribed would be so arbitrary, capricious, or unreasonable as to make the order unlawful, even though we might have come to a different conclusion if it had been for us to decide.

We are all of the opinion that the order should be modified by eliminating the right to transport freight between Philadelphia, and Allentown, Bethlehem, and Easton, and the towns in the immediate vicinity thereof, as well as to transport freight from those places in the opposite direction to Philadelphia via Lancaster and Reading.

The order of the commission as modified is affirmed, and it is directed that each of the parties shall bear the expense of printing its own brief and that the expense of printing the record and other costs of this appeal shall be borne in equal proportions by the appellants, the individual intervening appellants, and the York Motor Express Company.

OPINION, ON PETITION FOR REARGUMENT, PER CURIAM, April 10, 1940:

On February 16, 1940, following a petition of the appellants, Reading Company and Reading Transportation Company, for a reconsideration of the opinion and order of this court, filed on January 30, 1940, to Nos. 127 and 128 October Term, 1939, we granted a rule to show cause why a re-argument or reconsideration of

the opinion and order should not be had in No. 128, as to whether Reading should be included with Allentown, Bethlehem and Easton in the modification of the commission's order in those cases, so far as the same permitted transportation by York Motor Express Company between Philadelphia and such points, via Lancaster.

On the return day of the rule, after consideration of the petition and answers filed, we ordered a re-argument in the appeal to No. 128, to be limited as above stated. We were influenced to some extent in doing so by the fact that some of the judges who took part in the original hearing and decision of the case were of opinion that the order made was intended to include Reading as well as Allentown, Bethlehem and Easton in the modification of the commission's order. .

The re-argument so ordered has now been had, and after giving full consideration to the briefs and oral arguments, a majority of the court are of opinion that the reasons and considerations which moved the court to modify the commission's order as respects transportation from Philadelphia to Allentown, Bethlehem and Easton via Lancaster, apply also to transportation from Philadelphia to Reading via Lancaster.

It is accordingly ordered, adjudged and decreed that the judgment of this court in the above appeal, entered January 30, 1940 be modified and amended so as to read:

We are of opinion that the order of the commision should be modified by eliminating the right of York Motor Express Company to transport freight between Philadelphia and Reading, Allentown, Bethlehem and Easton, and the towns in the immediate vicinity thereof, via Lancaster, as well as to transport freight from those places in the opposite direction to Philadelphia via Lancaster, and it is so ordered.

The order of the commission as so modified is affirmed, and it is directed that each of the parties shall

bear the expense of printing its own brief, and that the expense of printing the record and other costs of this appeal shall be borne in equal proportions by the appellants, the intervening appellants, and the York Motor Express Company, intervening appellee.