## American Transfer Company's Petition.

*Corporations—Charter powers—Eminent domain—Right to take private property—Transmission of electricity—American Transfer Company.*

1. The American Transfer Company possessing the powers granted by the Act of April 11, 1866, P. L. 1867, page 1447, incorporating the Dispatch Company and providing that it should have power "to provide, erect, operate and maintain machinery, engines, tubes and apparatus, which may be deemed necessary for the transmission of property of any kind, entrusted to the care of said corporation, whether upon the surface of the earth, or under the same," and that it should have the right "to enter upon such lands and enclosures, streets, lanes and alleys, roads, highways and bridges, as it may be necessary to occupy, for the purposes aforesaid," and the powers of the Act of April 26, 1870, P. L. 1872, page 1240, incorporating the Novelty Power Company, and providing "that the business of said corporation shall be the receipt, delivery, transportation, storage, transmission, conveyance of goods, merchandise, letters, packages, messages, parcels, property of any and every kind and description," and the Act of March 16, 1868, P. L. 331, a supplement to the act incorporating the Dispatch Company, and providing "that nothing contained in said act shall be held to prohibit the said corporation from transporting persons within their pneumatic tubes," has no right to exercise power of eminent domain for the purpose of appropriating rights of way over private property for the purpose of transmitting electric power.

2. Corporate powers can never be created by implication nor extended by construction. No privilege is granted unless it be expressed in plain and unequivocal words testifying the intention of the legislature in a manner too plain to be misunderstood. When a corporate body asserts its right to do a thing, or to deprive an individual of his property even for an adequate compensation, it must be able to show that the right is conferred by the plain and unequivocal language of its charter.

Argued May 13, 1912.   Appeal, No. 124, Jan. T., 1912, by the American Transfer Company, from decree of. C. P. Lancaster Co., entered to Trust Book, No. 22,

page 95, dismissing rule for the approval of bond in re petition of American Transfer Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Petition to file a bond for the appropriation of lands.

LANDIS, P. J., filed the following opinion dismissing the rule to show cause why a bond should not be approved:

"Robert B. Risk is the owner of a tract of land, situated in Drumore Township, in this county, and the petitioner, the American Transfer Company, is desirous of obtaining a right-of-way over the same, in order to construct, maintain and operate thereon a line of wires, towers, and other structures, for the purpose of transmitting electric power. The said company has tendered to said Risk a bond, in the sum of $3,200, but he has refused to accept it, on the ground that this company is attempting to exercise powers which it does not now possess. Therefore, that this question may be settled, a bond has been presented to this court, and we are asked to give it our approval. In order to come to a correct conclusion, it is first necessary to fully consider the respective acts of assembly relating to the incorporation of this company, to ascertain the extent of its corporate rights.

"By a special act of the general assembly of Pennsylvania, prior to the Constitution of 1873, viz, the Act of April 11, 1866, P. L. 1867, page 1447, the Dispatch Company was duly incorporated. The capital stock of the company was to be five thousand shares of $25 each, and Section 3 of the act provided that it shall have power to provide, erect, operate and maintain machinery, engines, tubes and apparatus, which may be deemed necessary for the transmission of property of any kind, entrusted to the care of said corporation, whether upon the surface of the earth, or under the same; and for this purpose they are authorized and empowered, by them-

selves, their agents, engineers and workmen, and with their tools, wagons, carts and horses, to enter upon such lands and enclosures, streets, lanes and alleys, roads, highways and bridges, as it may be necessary to occupy, for the purposes aforesaid, or to obtain materials for the construction of said works, and to occupy, ditch and lay pipes through the same, and the same to repair, from time to time and if any injury be done to private property, the said company shall make compensation therefor, or give security for such compensation, according to the provisions of the eleventh section of an act, entitled 'an act regulating railroads,' approved February 19, 1849, P. L. 79: Provided, that before commencing the construction of their works, the said company shall file, in the office of the Secretary of the Commonwealth, a copy of the route of such works: And provided further, that the tubes, or pipes, of said company, shall not be used for the conveyance of petroleum oil, and that nothing herein contained shall be construed to authorize the construction of an ordinary track locomotive railroad, with ordinary passenger and freight cars, upon the surface of the ground."

By the Act of March 16, 1868, P. L. 331, entitled "A supplement to an act to incorporate the Dispatch Company, approved April eleventh, one thousand eight hundred and sixty-six," it was provided "that the Dispatch Company, in lieu of filing in the office of the Secretary of the Commonwealth a copy of the entire route of their work, as provided in the third section of the act incorporating said company, shall be required, before the construction of any section, to file a copy of the route of such section: Provided, that nothing contained in said act shall be held to prohibit the said corporation from transporting persons within their pneumatic tubes but that the corporation shall have no power to construct any ordinary steam locomotive or horse power

railroad or railway upon the surface of the ground and that this act shall not be operative, unless approved by all the stockholders of the company, either in person or by proxy, within thirty days after its passage."

Under the Act of April 26, 1870, P. L. 1872, page 1240, the Novelty Power Company was incorporated. The third section of this act declared "that the business of said corporation shall be the receipt, delivery, transportation, storage, transmission, conveyance of goods, merchandise, letters, packages, messages, parcels, property of any and every kind and description; and it shall have power to provide such means, offices, structures, agencies, and appliances, mechanical and otherwise, and to use, hire, operate, construct and maintain the same as it may deem necessary for its purposes, and shall be entitled to all the provisions and privileges and subject to all the restrictions (except the proviso at the end hereof) which are conferred, set forth, referred to and granted in and by the third section of an act to incorporate the Dispatch Company, approved the eleventh day of April, eighteen hundred and sixty-six, as fully as if all of said privileges had been herein specifically set forth and recited at length; and may make and enforce its contracts, and establish, regulate and collect its charges, and shall have, enjoy and exercise all the rights, powers and privileges granted in and by this act, and the third section of the act incorporating the Dispatch Company as aforesaid, any law or ordinance to the contrary notwithstanding: Provided, that nothing herein contained shall be construed to authorize the construction of an ordinary locomotive railroad for the conveyance of passengers upon the surface of the ground."

The respondent, in his answer, declares: First, that the corporation has forfeited its franchises by nonuser; second, that, at the time of the passage of the special acts, electricity or electric power was not con-

templated, that it was not intended to be included within the scope of the petitioner's charter, nor was it such property as the petitioner was given the right to receive, deliver, transport, store, transmit and convey; third, that the petitioner had no right, under its charter, to exercise the power of eminent domain, for the purpose of appropriating rights-of-way over private property, to construct a line and apparatus, for the purpose of transmitting electric power; and fourth, that the petitioner was, at one time, engaged in transporting oil, and as it had elected to engage in this kind of business, it is not enabled to exercise any of its corporate powers to engage in the business of transporting electric power.

The court having decided that there wasn't a forforfeiture, proceeded as follows:

The second proposition is, that, at the time the special acts were passed, electricity or electric power was not contemplated, and that it was not intended to be included within the scope of the petitioner's charter, and this is the only one which we need now discuss. We are disposed to think that there is merit in this proposition. "Grants of franchises are usually prepared by those interested in them and submitted to the legislatures with a view to obtain the most liberal grant obtainable, and for this and other reasons such grants should be in plain language, certain, definite in nature, and contain no ambiguity in their terms, and will be strictly construed against the grantee:" Cleveland Electric Railway Company v. Cleveland, 204 U. S. 116; Blair v. Chicago, 201 U. S. 400. "It is a general rule that 'every public grant of property or of privileges or franchises, if ambiguous, is to be construed against the grantee and in favor of the public:'" 1 Cook on Corporations (6th edition, section 2); Knoxville Water Co. v. Knoxville, 200 U. S. 22. In Pennsylvania Railroad Company v. Canal Commissioners, 21 Pa. 9, Mr. Justice BLACK, delivering the opin-

ion of the court, said: "It may be that the privilege which the relators claim might arise by implication out of their charter, or some other of the acts cited by their counsel, if we were at liberty to give to them the broad construction which we sometimes apply to other laws of a different character. But corporate powers can never be created by implication nor extended by construction. No privilege is granted, unless it be expressed in plain and unequivocal words, testifying the intention of the legislature in a manner too plain to be misunderstood. When the State means to clothe a corporate body with a portion of her own sovereignty, and to disarm herself to that extent of the powers which belong to her, it is so easy to say so that we will never believe it to be meant when it is not said; and words of equivocal import are so easily inserted by mistake or fraud, that every consideration of justice and policy requires that they should be treated as nugatory, when they do find their way into the enactments of the legislature. In the construction of a charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation. This is the rule sustained by all the courts in this country and in England. No other has ever received the sanction of any authority to which we owe much deference." See, also, Brown v. Radnor Township Electric Light Company, 208 Pa. 453. In accordance with this well known rule, it was held, in Bly v. White Deer Mountain Water Company, 197 Pa. 80, that, "as a water company has no right to supply water in territory adjacent to the place in which it is located, it has no authority under its right of eminent domain to condemn and appropriate waters for such purposes; and, if it attempts to do so, a landowner who is threatened with injury has a standing under the Act of June 19, 1871, P. L. 1360, in equity, for an injunction to restrain such act." It was also held that "there can be no authority or power conferred upon a corporation by the certificate or letters

patent, except such as are clearly given by, or necessarily implied from, the language of the statute under which they are granted. Equally true is it that the rights and privileges of a corporation must be written, in the charter or they do not exist. When a corporate body asserts its right to do a thing or deprive an individual of its property, even for an adequate compensation, it must be able to show that the right is conferred by the plain and unequivocal language of its charter." See, also, Schroeder v. Scranton Gas and Water Company, 20 Pa. Superior Ct. 255.

The Corporation Act of April 29, 1874, P. L. 73, provided for the incorporation of companies for "the manufacture and supply of gas or the supply of light or heat to the public by any other means." In Scranton Electric Light and Heat Company's Appeal, 122 Pa. 154, it was held that this did not authorize the incorporation of companies for the supply of electric light to consumers. Mr. Justice Gordon, delivering the opinion of the court, said: "Did the legislature intend to embrace electric lighting in the language, 'companies incorporated under the provisions of this statute, for the supply of water to the public, or for the manufacture of gas, or the supply of light or heat to the public by any other means'? Before answering this question, we must call attention to what has heretofore been regarded as an unalterable rule; that is, that a legislative grant to a corporation of exclusive privileges is, as said by Mr. Justice Green, in Emerson v. Commonwealth, 108 Pa. 111, to be construed most strictly, and we may add, that every intendment not obviously in favor of the grant must be construed against it. Monopolies are favorites neither with courts nor people. They operate in restraint of competition, and are, hence, as a rule, detrimental to the public welfare; nor are they at all allowable except where the resultant advantage is in favor of the public, as, for instance, where a water

or gas company could not exist except as a monopoly. ...... In the case above cited, the sharpest technicality of construction was adopted in order to defeat the extravagant demand of the corporation claiming the exclusive privilege to furnish the City of Pittsburgh with natural gas for the purposes of fuel. But in the case before us, it is apparent that the legislature did not, in the making of the Act of 1874, intend to embrace lighting by electricity. It is true, that the language of this statute seems, at first sight, to be broad enough to embrace all methods of lighting and heating then known, or that might thereafter become known, yet, we suppose, it will not be contended that the intention was to grant to this company the exclusive privilege of furnishing to the citizens of Scranton coal, wood, oil, and other well known and ordinary materials for lighting and heating. Not, indeed, that the law-makers could not have conferred such power, but because it is not probable that they intended to confer a power so unreasonable. It is, therefore, obvious that we must consult not only the letter of the act, but also the intention of its makers. If, however, it were designed to embrace a method of lighting by electricity, a method not then in use for economic purposes, it is remarkable that the means necessary for its proper distribution were not provided for. Under the 34th section of the act, the only one upon which the plaintiff relies for its exclusive right, there is no power conferred to enter upon the public streets for the erection of poles and placing of wires, the privilege of so entering being confined to the laying of pipes only. From this it is clear that the legislature had in mind, not a then unknown process of public lighting and heating, but a process involving the use of gas, or some similar material, for the distribution of which pipes only were necessary." In Allegheny County Light Company v. Booth, 216 Pa. 564, the company was incorporated in 1880 under the Act of 1874, for the purpose of the manufacture and supply

of light. Afterwards, the company surrendered its original charter, and took out letters patent under the Act of May 8, 1889, P. L. 136, providing for the incorporation of companies for the supply of light, heat and power by electricity. It was held that the right of the company to change its system from poles and wires to conduits was expressly provided for in the Act of 1889. Mr. Justice BROWN said: "But the appellant was not authorized, under its original charter, to supply light by electricity. . . . . . . In locating and installing their systems of distributing electricity, electric light companies are given by this section the right of eminent domain upon public streets, lanes, alleys or highways outside of city or borough limits, and, within such limits, they may use the streets with municipal consent. This is a limited right of eminent domain, the limitation upon it being found in the words of the grant of it." The Act of May 8, 1889, P. L. 136, provides: "Clause 1. Every such corporation shall have the authority to supply light, heat and power, or any of them, by electricity, to the public in the borough, town, city or district where it may be located, and to such persons, partnerships and corporations, residing therein or adjacent thereto, as may desire the same, at such prices as may be agreed upon, and the power, also, to make, erect and maintain the necessary buildings, machinery and apparatus for supplying such light, heat and power, or any of them, and to distribute the same, with the right to enter upon any public street, lane, alley or highway for such purpose, to alter, inspect and repair its system of distribution." In Brown v. Radnor Township Electric Light Company, 208 Pa. 453, it was held that an electric light company might be incorporated for a township, and that the word "district" was not to be restricted merely to a division of a city or borough. It was also decided that such an incorporated company, by the express terms of the act, had a limited power of eminent domain, and, under such

power, might enter upon the bed of a turnpike road and erect its poles and string its wires, notwithstanding the objection of abutting owners who own the fee in the bed of the road. Mr. Justice DEAN, in delivering the opinion of the court, said: "It is difficult to see how the power thus conferred can be said to be by implication or construction; true, no power to actually take and appropriate land is given, but an additional servitude is imposed upon the land, a servitude additional to that of the turnpike company, and this by express positive grant." It is not, however, decided that such a company has the right, generally, to enter upon and occupy land; and that right would appear to be confined by the act of assembly to the public streets, lanes, alleys or highways.

It is a well known fact that, although the force of electricity was known when the special Acts of 1866 and 1870 were passed by the legislature, yet it had never been applied for the purposes of light, heat or power, in a public way, nor were any structures, such as are now contemplated, nor transmission lines for conducting electricity, then in use. In addition, the acts themselves seem to us to designate as the purposes intended something in the nature of pneumatic tubes, through which specific articles might be carried. The Act of 1866 states the purpose of the Dispatch Company to be "to provide, erect, operate and maintain machinery, engines, tubes and apparatus, which may be deemed necessary for the transmission of property of any kind, entrusted to the care of said corporation, whether upon the surface of the earth, or under the same," and the right is given to it "to enter upon such lands and enclosures, streets, lanes and alleys, roads, highways and bridges, as it may be necessary to occupy, for the purposes aforesaid." The Act of 1870 declares "that the business of said corporation (the Novelty Power Company) shall be the receipt, delivery, transportation, storage, transmission, conveyance of

goods, merchandise, letters, packages, messages, parcels, property of any and every kind and description." And the Act of 1868, which is a supplement to the Act of 1866, declares "that nothing contained in said act shall be held to prohibit the said corporation from transporting persons within their pneumatic tubes." It cannot be contended that the electric wires which the company now intends to erect extend either upon the surface of the earth or under the same; and as the general right of eminent domain is such an act of sovereign authority which even electric light companies do not, as we have shown, now possess, can it be reasonably supposed that the legislature, in passing these special acts, had in contemplation the grant of any such power? If it had so meant, we think it would have said so, and that a failure to so declare is a denial of the right.

Fully appreciating the importance of the question that is here raised, we are of opinion that the good of the public demands that such corporate powers shall not be considered as granted in charters of this character, unless express authority for their exercise is therein plainly indicated. As we are of the opinion that this company is not endowed with the power of eminent domain in respect to the purposes for which it seeks to exercise it, we discharge the rule to show cause why this bond should not be approved, and dismiss the petition, at the cost of the petitioner.

*Error assigned* was refusal to approve bond.

*W. U. Hensel,* for appellant.—If the legislature had the right to make, and did make, the grant contended for, it is broad enough to include the transmission or transportation of electricity as "property"—within the meaning and contemplation of the acts: Carother's App., 118 Pa. 468; People ex rel. Electric Mfg. Co. v. Wemple, 129 N. Y. 543 (29 N. E. Repr. 808) ; Hudson River Tele-

phone Co. v. Ry. Co., 135 N. Y. 393 (32 N. E. Repr. 148) ; Beggs v. Edison Elec. Ill. Co., 96 Ala. 295 (11 So. Repr. 381).

Electricity, its properties and varied uses were well known long before its practical efficiency had become so universal as it now is: People ex rel. v. Wemple, 129 N. Y. 543 (29 N. E. Repr. 808) ; Allegheny County Light Co. v. Booth, 216 Pa. 564.

The legislature may be assumed to have contemplated the inevitable development of science; as well as that the most signal discoveries mostly have experienced long periods of gestation.

*John E. Malone,* with him *Spencer G. Nauman,* for appellee.—The charter of this company never contemplated "electricity" as property or a commodity to be transported or transmitted by lines which it might erect or construct: Com. v. Northern Elec. Light & Power Co., 145 Pa. 105; Scranton Elec. Light & Heat Co.'s App., 122 Pa. 154.

"Omnibus" charters, and grants in derogation of public rights, and the extension of the right of eminent domain are not favored by judicial construction: Missouri ex rel. v. Murphy, 170 U. S. 78 (18 Sup. Ct. Repr. 505) ; Penna. R. R. Co. v. Canal Commissioners, 21 Pa. 9; Chincleclamouche Lumber & Boom Co. v. Com. ex rel., 100 Pa. 438; Keystone State Tel. & T. Co. v. Ridley Park Borough, 28 Pa. Superior Ct. 635; Edwards v. R. R. Co., 215 Pa. 597; Emerson v. Com., 108 Pa. 111.

PER CURIAM, July 2, 1912:

The order dismissing the appellant's petition is affirmed on the opinion of Judge LANDIS.