York Haven Water and Power Company and Metropolitan Edison Company, Appellants, *v.* The Public Service Commission.

*Public Service Commission—Public Service Company Law—Electric Light Companies—Water Companies—Purchase of—Illegality—Acts of May 16, 1889, P. L. 226—Act of July 2, 1895, P. L. 425—Act of June 2, 1915, P. L. 724—Act of May 3, 1909, P. L. 408.*

A water company, organized under section 2, subdivision IX, of the General Corporation Law, as amended by the Act of May 16, 1889, P. L. 226, to supply water to the public, and engaged in the manufacture of electricity by hydro-electric power, under the authority of the Act of July 2, 1895, P. L. 425, cannot sell its property

and franchise to a corporation, organized under sub-division XI of the General Corporation Law for the purpose of manufacturing light, heat or power by means of electricity. The provisions of the Act of June 2, 1915, P. L. 724, amending sec. 5 of Act of 1876, P. L. 30, do not apply to corporations organized for different purposes, under different subsections of the General Corporation Law of 1874.

The two corporations were not incorporated for the purpose of transacting the "same or a similar line of business" and therefore, are not authorized to merge by the Act of May 3, 1909, P. L. 408, which limits merger to such corporations.

Argued November 10, 1925.  Appeal No. 270 October T., 1925, by York Haven Water and Power Company and Metropolitan Edison Company from the report and order of the Public Service Commission of the Commonwealth of Pennsylvania, In re Application for a certificate of public convenience evidencing the approval of the proposed sale of the latter to the former. Application Docket No. 11726—1924.  Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Application for a certificate of public convenience evidencing the approval of the sale of the property and franchises of York Haven Water & Power Company to Metropolitan Edison Company.

The facts are stated in the opinion of the Superior Court.

The commission refused to grant the certificate. The petitioning companies appealed.

*Error assigned* was the order of the commission.

*Ralph J. Baker* and *Berne H. Evans* for appellant.— The Public Service Commission erred in refusing to grant the certificate.  There is ample authority to permit the proposed merger of two companies engaged in the manufacture of electricity irrespective of the fact that the companies were originally chartered for different purposes: Motter v. Kennett Township Electric

Company, et al., 212 Pa. 613; Commonwealth v. Citizen's Light, Heat & Power Company, 25 Pa. Dist. Rep. 786; Commonwealth v. Huntingdon Gas Company, 26 Pa. C. C. 657; Kane & E. R. R. Co. v. Pittsburgh & W. R. R. Co., 241 Pa. 608; Punxsutawney Borough v. Phillips Gas & Oil Co., 238 Pa. 23; Pennsylvania Utilities Company v. Public Service Commission, 69 Pa. Superior Court, 612; Citizens Electric Illuminating Co. v. Lackawanna & Wyoming Valley Railroad Company, 255 Pa. 176; Malone v. Gas Light Co., 182 Pa. 309; Application of Pennsylvania Power Co., 3 Pa. Corp. Rep. 597.

*Spencer G. Nauman,* and with him *C. H. Bergner,* for intervening appellee: There is no specific authority to permit the sale and consolidation: Hey v. Springfield Water Company, 207 Pa. 38.

The two companies were chartered for entirely different objects and cannot be consolidated: Commonwealth v. Pennsylvania Water and Power Company, 271 Pa. 456; In re Merger of Hummelstown Water Co. and Hummelstown Electric Light, Heat and Power Co., 15 Pa. Dist. Rep. 532; 32 Pa. C. C. 593.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for The Public Service Commission.

OPINION BY LINN, J., February 26, 1926:

Appellants' petition for approval of the purchase by one of them of the property and franchises of the other, was denied on the ground that they lacked corporate power to merge; the commission held that the statute relied on to support the merger, conferred such authority only when the merging corporations were formed for the same or similar purposes and that appellants were not so organized. Whether the statute permits the merger is the only point for decision.

The York Haven Water and Power Company (herein designated the water company) desires to sell its property and franchises, and the Metropolitan Edison Company, (to be called Edison Company) asks leave to buy.

The water company was organized under section 2, second class, subdivision IX, of the general corporation law (1874 P. L. 73) as amended May 16, 1889, P. L. 226, authorizing the formation of corporations for "the supply of water to the public, or the supply, storage or transportation of water and water power for commercial and manufacturing purposes." It was formed in January, 1895, "for the purpose," as the application states, "of supplying water and water power to the public and to firms, individuals and corporations in the Borough of York Haven, York County, Pennsylvania, and the territory adjacent thereto."

The act of July 2, 1895, P. L. 425, provides that corporations organized to supply water power, or owning water power, "may develop electric power for commercial purposes by means of water power, and shall have authority to supply current and power to the public, individuals, firms and corporations at such prices as may be agreed upon......."

The water company, by so incorporating under section 2, sub. IX and supplements, acquired the franchise of being a corporation, and the right or franchise to act in a corporate capacity. The legal scope or boundary of the enjoyment of that franchise is the supply of water and water power as originally stated, and as enlarged when the company availed itself of supplementary legislation permitting it to convert water power into electrical energy. It established a plant and equipment therefor, and appears to have exercised the power of eminent domain: Rider's case, 255 Pa. 196, 198. All its franchises, powers and immunities it still has; it is a quasi-public corporation with public

duties to be performed: "......the powers, privileges and duties of a corporation are fixed by its charter, and in a legal proceeding must be determined by the requirements of the charter..........": Conoy Twp. v. York Haven Co., 222 Pa. 319, 323; see also Rider v. York Haven Co., 242 Pa. 141, 145. We therefore disregard its assertion that it has not supplied and does not intend to supply any water or water power to the public. In the sale by the York Haven Paper Company of its land and water rights to the water company, the grantor reserved "a sufficient flow of water to enable said York Haven Paper Company to develop 3000 horsepower for all time after the construction of a contemplated power plant by the said [water company] said supply of water to be furnished said York Haven Paper Company without cost or charge." The record would indicate that the Paper Company, received that quantity of water from the dam of the water company, a fact, however, which we disregard in the decision of this appeal.

The Edison Company was formed by the merger of others, pursuant to the general merger act of May 3, 1909, P. L. 408, all the constituent corporations having been formed under subdivision XI, section 2, of the general corporation act as amended May 8, 1889, P. L. 136, authorizing the formation of corporations for "the manufacture and supply of gas, or the supply of light, heat and power by means of electricity, or the supply of light, heat or power to the public by any other means."

With that statement concerning appellants, we examine their claim of authority to merge by means of the proposed sale. It is clear that the applicants for incorporation of the water company who selected subdivision IX to describe the objects of their enjoyment of the desired corporate franchise, chose a statutory provision very different in the authorized corporate

activity from that chosen by the applicants who selected subdivision XI (the corporations merged into the Edison company) and that the respective franchises so obtained to act in corporate capacities are radically unlike. The franchise of one is to supply water and water power, augmented pursuant to the supplementary legislation enlarging the possible scope of its activity. The franchise of the other is to supply light, heat and power but not water. These obvious differences are now mentioned only to indicate the marked divergence in the character of the respective franchises of the two appellants and the business permitted to be done by each pursuant to those franchises. In this connection a quotation from the opinion in Conoy Township against this appellant water company is peculiarly appropriate: "It is argued, however, that the appellee company [the present appellant water company] does not supply water or power to the public and firms and individuals and corporations in the borough of York Haven, and that what it attempts to do cannot in any sense be considered to be a service to the public, or that the public has a right to compel the performance of any duty to it. The answer to this contention is that the powers, privileges and duties of a corporation are fixed by its charter, and in a legal proceeding must be determined by the requirements of the charter, and in a case involving the rights to impose a tax, the question whether or not such corporation may be exceeding its corporate powers or has failed to perform duties owed to the public, cannot be raised and determined.": Conoy Twp. v. this appellant (supra). Sec. 25 of the corporation act (1874 P. L. 83) provides that incorporation under that statute shall have the same effect as "if the powers and privileges conferred, and the duties enjoined, had been conferred and enjoined by a special act of the legislature, and the franchise granted shall be construed according to

the same rules of law and equity as if it had been created by special charter.  ... ... ''

So considering appellants, it is clear that they were not incorporated for the purpose of transacting the "same or a similar line of business," and therefore are not authorized to merge by the act of May 3, 1909, P. L. 408, which limits merger to such corporations.

We turn, then, to the statute relied on to accomplish the result not permitted by the act of 1909. It is the act of June 2, 1915, P. L. 724, amending sec. 5, act of 1876, P. L. 30, amending sec. 23, act of 1874, P. L. 73; it contains the following provision, on the meaning of which this case depends: "......and it shall be lawful for any corporation in the same manner to sell, assign, dispose of and convey to any corporation created under or accepting the provisions of this act, its franchises and all its property, real, personal and mixed, and thereafter such corporation shall cease to exist, and the said property and franchises not inconsistent with this act, shall thereafter be vested in the corporation so purchasing as aforesaid: Provided, That the returns required......"

In their brief appellants say that they "precisely fit the only conditions set forth in the act to qualify them respectively to effect the sale and purchase," and they amplify this by asserting that "the only restriction or limitation is that if the vendor possesses franchises not consistent with the Act of 1874, that is, with the rights and franchises already held by the vendee as a company governed by that Act, these franchises fail to pass and fall with the ended existence of the vendor corporation, but the sale is nevertheless authorized and effective in all other respects."

We cannot reach that conclusion. Remembering that we are dealing with statutory powers conferred on corporations, we inquire how shall appellants' construction of the statutes be tested? How is the special

charter (sec. 25 supra) to be construed? In P. R. R. Co. v. Canal Commissioners, 21 Pa. 9, 22, the rule is thus stated: "But corporate powers can never be created by implication nor extended by construction. No privilege is granted unless it be expressed in plain and unequivocal words, testifying the intention of the legislature in a manner too plain to be misunderstood. When the state means to clothe a corporate body with a portion of her own sovereignty, and to disarm herself to that extent of the powers which belong to her, it is so easy to say so that we will never believe it to be meant when it is not said; and words of equivocal import are so easily inserted by mistake or fraud, that every consideration of justice and policy requires that they should be treated as nugatory, when they do find their way into the enactments of the legislature. In the construction of a charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation." That rule was approved in Blair v. Chicago, 201 U. S. 400, 471; see also Scranton Electric L. & H. Co.'s Appeal, 122 Pa. 154; American Transfer Co.'s Petition, 237 Pa. 241; Cochranton Telephone Co. et al. v. Public Service Commission, 263 Pa. 506; Perry County Tel. & Tel. Co. v. Public Service Commission, 265 Pa. 274.

In Commonwealth v. Penna Water and Power Co., 271 Pa. 456, a water power company converting its power into electrical current was held not to be taxable as an electric company. The court said: "There is a well-marked distinction between a water-power company and an electric light company, and the defendant is clearly the former and not the latter. The fact that a water company converts its power into electric current does not make it an electric light company, and it is the business of the latter that is taxed......"

"As defendant is neither an electric light company, nor engaged in the business of electric lighting, it is

not subject to the tax in question. There may be good reasons why a water-power company should pay a state tax, but that is a matter for the legislature. A tax cannot be imposed by implication. True, the act of 1889 creates a class of corporations designated as electric light, heat and power companies, but a water-power company does not belong to that class.''

The act of 1874 contained no provision authorizing one corporation to sell its property and franchises to another, or otherwise to merge; but in 1876 (P. L. 30, 33) sec. 23, which originally provided only for the reduction of capital stock and for change in its par value, was supplemented by the addition of the following provision which we quote again because its meaning is now in dispute: ''.....and it shall be lawful for any corporation in the same manner to sell, assign, dispose of and convey to any corporation created under or accepting the provisions of this act, its franchises, and all its property, real, personal or mixed, and thereafter such corporation shall cease to exist, and the said property and franchises not inconsistent with this act, shall thereafter be vested in the corporation so purchasing as aforesaid.'' What do they mean?

Those words confine the right of merger, to corporations formed for the same purpose,—for the transaction of the same business: Hey v. Springfield Water Co., 207 Pa. 38. (See also the discussion by Governor Pennypacker in refusing the application to merge under the act of May 29, 1901, P. L. 349, of a water company and an electric light company, 15 D. R. 532; that act of 1901 was subsequently amended by the act of 1909, supra.) Applicants for incorporation were not authorized to obtain the franchise to supply water and water power (sub. IX, etc.) and also to supply light, heat and power by means of electricity (sub. XI, etc.); an application for both franchises would not have been in conformity with the statute; possession

222 YORK HAVEN W. & P. CO., Appels., *v.* P. S. C.

Opinion of the Court.    [87 Pa. Superior Ct.

of those diverse franchises by one corporation *would* be inconsistent with the provisions of the act, requiring applicants (doubtless pursuant to sec. 6 Art. XVI of the Constitution) to state, "II. The purpose for which it [the proposed corporation] is formed." As an application, in that respect inconsistent with the statute, would not authorize an original incorporation for both purposes, it likewise disqualifies appellants from merging, because merger is permitted only when it will "not [be] inconsistent with this act" to unite in a single corporation, all, not only part, of the corporate franchises of vendor and vendee. The phrase limits or classifies the corporations permitted to unite by purchase. It is improbable that the legislature intended (as appellants say) that however divergent the corporate purposes stated in the charters might be, if they had any franchise in common, they could unite, the vendor's franchises not common to both, passing out of existence with the dissolution of the vendor. It is unlikely that the legislature intended such method of dissolution, with the partial abandonment of essential corporate franchises at the mere option of the vendor and without supervision by the state. For the right to surrender corporate powers or to dissolve the corporation with the approval of a court, was then already vested in the common pleas by a general act of April 9, 1856, P. L. 293, authorizing any corporation to petition the common pleas "for permission to surrender any power contained in its charter, or for the dissolution of such corporation. ... .... " with authority in the court to grant the petition if "without prejudice to the public welfare, or the interests of the corporators," pursuant to the general equity jurisdiction conferred by the act of June 16, 1836, P. L. 784; Titusville Oil Exchange's Dissolution, 2 Pa. Super. Ct., 508.

Motter v. Kennett Twp. Electric Co. et al., 212 Pa. 613, does not support appellants' interpretation of the

words in question.  In that case the effort was to restrain the merger of three corporations all organized under the same subdivision of the general corporation act; the corporations were proceeding to merge pursuant to the act of May 29, 1901, P. L. 349.  The injunction was refused in an opinion which was adopted Per Curiam in the Supreme Court.  If there is any question whether the three corporations so consolidating were engaged in the same or similar line of business, the fact is that the act of 1901 which had not required that qualification, was amended by the act of 1909, supra, limiting mergers of corporations so engaged.

The order appealed from is affirmed.

KELLER and GAWTHROP, JJ., dissent.