Commonwealth of Pennsylvania *v.* Mango et al.,
Appellants.

Argued November 11, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*B. D. Oliensis,* for appellants.

*Oliver M. Wolff,* District Attorney, and with him *Emanuel Weiss,* Assistant District Attorney, for appellee.

Opinion by Trexler, P. J., January 30, 1931:

The appellants were indicted jointly in two indictments, the charges being involuntary manslaughter and the unlawful manufacture and possession of intoxicating liquor. The facts briefly summarized are:

On February 16, 1930, two men lost their lives in an explosion which occurred on certain premises in the city of Reading. Buried amidst the wreckage, the police found a large still fitted out with the apparatus necessary for distillation, a number of drums, some filled and some empty, several containing caustic soda, a number of cans and four acetylene tanks. The contents of the still and the drums proved upon analysis

to be denatured alcohol. Several experts called by the Commonwealth testified that the still was devised for the separation of the denaturant element—the ethyl acetate—from the alcohol in which it had been placed by the process of hydrolysis, that for this purpose caustic soda was used and that thereby the alcohol vaporized, that the vapor thus produced is highly inflammable, and when mixed with air and ignited, explodes; and that the explosion must have resulted in the present instance from the mixed alcohol vapor and air.

(1) The refusal of the following point is the ground for the first question submitted: "That if the jury believe under the evidence that the defendants had no knowledge of the purposes for which the building or its contents was being used, they cannot be convicted of involuntary manslaughter or the illegal manufacture of intoxicating liquors for beverage purposes." We think the proposition submitted was too broad. The Snyder Act of 27 March, 1923, P. L. 34, in section 3, prohibits the possession and manufacture of intoxicating liquors for beverage purposes. The word "knowingly" does not appear. Knowledge of the illegality of the offense is not essential. Where a statute in the exercise of police power prohibits an act, the plea of ignorance will not prevail: Com. v. Noye, 95 Pa. Superior Ct. 493; Com. v. Hendrie, 97 Pa. Superior Ct. 328; Com. v. Jones, 87 Pa. Superior Ct. 219; Com. v. Liberty Product Company, 84 Pa. Superior Ct. 473. Where the contact of the defendant with the operation is casual or fortuitous, it may be the duty of the court, if requested, to instruct the jury that knowledge is essential in order to convict the defendant, but the point submitted does not present that phase of the question.

(2) The following point submitted by the defendants was refused: "That if the jury believe that under

all the evidence in the case that the deaths did not result from either the possession of a still or illegal manufacture of intoxicating liquor for beverage purposes, the defendants cannot be convicted of involuntary manslaughter and the verdict should be 'not guilty.' " The court charged that the deaths must have been occasioned by an explosion resulting from or caused by the illegal operation. If it did not result from the unlawful possession, the defendants would "not be responsible so far as this particular crime is concerned." The point submitted seems to limit the explosion to the actual manufacture of the intoxicating liquor for beverage purposes. If materials designed to be used in the accomplishment of the unlawful purpose were brought upon the premises, it matters not whether the explosion was caused by the actual combination of such materials or their negligent handling before they were put in the still. If the acetylene tanks were maintained in order to accomplish an unlawful purpose and being so maintained and negligently handled, the accident occurred and the defendants would be guilty. The appellant argues that this leaves the matter to mere conjecture as there was no evidence as to what particular occurrence caused the accident. We think the reasonable inference to be drawn from the testimony is that the explosion occurred from the operation of the still. The experts so testified, although they admitted the possibility of its occurring from some other cause. It seems that if there be any resort to conjecture, it must be in an effort to ascertain some cause other than the operation of the still. There was sufficient testimony to warrant the conclusion that the explosion occurred through some agency connected with the unlawful enterprise. The charge of the court fully and fairly covered the matter.

(3) The court, during the course of the trial, made

the following remark: A certain question relative to the construction of the apparatus, the remains of which were found after the explosion and the purpose it was intended to be used, having been propounded to the witness, the learned trial judge overruled the objection and stated, "Of course he can't testify to that. Objection overruled; exception for defendants. This is a type of case where the Commonwealth necessarily has its difficulties, and the court, even at the risk of having the verdict set aside, appreciating the difficulties of the Commonwealth in a case of this kind, will lean toward the Commonwealth, and I so do." The defendants took exception to the court's remarks on the ground that they were prejudicial to the defendants and the court in answer thereto says that they were not prejudicial and that if the court thought they were, he would warn the jury to disregard them. The statement of the court that they were not prejudicial seems to have been acquiesced in by the counsel for the defendant, for he pursued the subject no further and made no request for the withdrawal of a juror. The remark was, of course, addressed to the counsel and referred to the latitude afforded to the Commonwealth in the admission of testimony and was made in the hearing of the jury, but as the court immediately disclaimed any prejudicial effect, we think the remark was harmless, particularly so, as we have carefully examined the charge of the court and find there is not the slightest suggestion by the court as to what the verdict should be. "To warrant a reversal of a conviction because of remarks of the trial judge, it must appear that such remarks were prejudicial to the rights of the defendant or that it is strongly probable that prejudice resulted": Com. v. Heffelfinger, 82 Pa. Superior Ct. 351, and cases there cited.

(4) The court charged: "If the jury cannot find matter in or from the evidence on which to base the

doubt, then it is not a doubt arising from the evidence, then it is not a reasonable doubt, but simply a possible doubt, and not such a doubt as would justify a conscientious jury in hesitating in the rendition of a verdict where the mind is fairly satisfied except for the existence of this doubt.'' The appellant claims that the use of the words ''fairly satisfied'' tended to reduce the legal standard required to convict. The instructions of the court taken as a whole set up the standard of proof beyond a reasonable doubt.. The particular part above quoted must be taken in connection with the rest of the charge pertaining to the subject. The district attorney has called our attention that the same words ''fairly satisfied'' were employed in the oft referred to charge in the case of Com. v. Drum, 58 Pa. 19. We are convinced that there was no error in the instructions in this subject.

(5) The court instructed the jury as follows: ''You will recall that Sec. 13 [Snyder Act, supra] of this act which I read to you provides that in any prosecution, when proof has been given in evidence of the possession of any intoxicating liquor, same shall be prima facie evidence that same was possessed for beverage purposes. So if you find that it was intoxicating liquor in violation of these acts of assembly, and that these men have had it in their possession, then the presumption comes into play, and there is no testimony to rebut it, it has not been denied that it was possessed for beverage purposes.'' We see no error in this. Certainly the court was right in stating that the possession of intoxicating beverages creates a presumption that they were possessed for beverage purposes. The prima facie proof requires some testimony to overcome it and the comment of the court that no evidence to overcome the prima facie had been offered was entirely correct. The court nowhere stated that this necessarily must result in a verdict of guilty. If

the jury believed that the defendant operated the still and manufactured potable alcohol from the denatured product, under the Snyder Act, the presumption followed, unless rebutted, that the intention was to use the product for beverage purposes. This we take it is the intention of the 13th section of the act. It will be noticed that the section refers to the prima facie stating, "but this presumption shall not apply, etc." There is no confusion as to the terms "prima facie" and "presumption" as argued by the appellant. The act uses them interchangeably.

(6) Was it proper to sentence the defendants for possession and manufacture and for manslaughter? We would unhesitatingly answer in the affirmative. We see no analogy between the cases and the present that hold that there can be no separate sentences in "felonious entry and burglary": Johnston v. Com., 85 Pa. 54, and Com. v. Bailey et al., 92 Pa. Superior Ct. 581; or intent to ravish and rape, Harman v. Com., 12 S. & R. 69; or fornication and bastardy, Com. v. Lloyd, 141 Pa. 28, (there having been a conviction of the former). The explosion and ensuing deaths bore no relation to the possession and manufacture of illegal beverages. It occurred by reason of the operation, but was not part of it. The nature of the offense of manufacturing illegal beverages and of manslaughter are entirely different. The proper criterion is set out in Com. v. Feenix, 6 D. & C. 15, from which we quote: "The test is, however, whether the one crime forms a necessary part of the other, as assault does of battery, or as assault and battery does of murder, or larceny does of robbery, and so on. This principle has no application where the one offense is not necessarily involved in the other, but is a separate and distinct crime, even though, in the particular case, it may constitute a part of succession of consecutive offenses committed immediately antecedent to another

crime which is the main and ultimate purpose of the perpetrator. Thus, if a person, in order to rob another, commits assault and battery on third persons standing between him and his ultimate victim, certainly such assault and battery would not be merged in the final act of robbery. So, also, it has been held that the manufacture of intoxicating liquor and the subsequent sale thereof are distinct and separate offenses and not in their nature parts of a single transaction, even though the defendant may have manufactured the liquor only in order to enable him to sell it: Com. v. Saler, 84 Pa. Superior Ct. 281.''

All the assignments of error are overruled and the judgment is affirmed.

This order to be entered in all the appeals, to wit: Nos. 394, 395, 400, 401, 402, 403, 404 and 405, October Term, 1930.