## Oak Grove Water Company, Appellant, v. Thompson.

*Corporations—Water companies—Bond in condemnation proceedings—Act of April 29, 1874, P. L. 73—Practice, C. P.—Petition.*

1. The court of common pleas is justified in refusing to approve a bond offered by a water company in condemnation proceedings, where the only proof relied upon by the company as to the presentation of the bond to the owner and that the owner and the company could not agree upon the amount of damages claimed, is the affidavit of a person who is not shown by the record to have had any connection whatever with the company.

2. Where a water company filed a bond in condemnation proceedings and the owner excepts to the bond on the ground that there was no averment or proof that the company was a Pennsylvania corporation, or that it had the power to appropriate land and waters in the jurisdiction of the court, and further that the company had no authority either by statute or by charter to appropriate the land and water described in the bond, and the company, although filing answers denying averments in the exceptions, does nothing further to substantiate the answers, the court of common pleas will be justified, after the expiration of a year, in entering a decree refusing to approve of the bond.

3. Although the Act of April 29, 1874, P. L. 73, under which water companies are incorporated and given the right of eminent domain, does not require a formal petition to be presented to the court asking for the approval of a bond refused by a landowner when tendered to him by the company to secure to him damages

for the taking of his property, the proper and better practice is to file such a petition at the time the approval of the bond is asked for.

4. Such a petition should set forth (1) the corporate power of the water company to take the land under the right of eminent domain; (2) an accurate description of the land by metes and bounds, evidenced by an accompanying draft of the same; (3) the failure of the company and of the landowner to agree upon the amount of damages claimed; (4) the tender by the company to the landowner of a bond with at least two sufficient sureties, and (5) the refusal of the landowner to accept the bond, and that written notice was given to him of the time when the same would be presented for filing in court for approval.

5. If the averments in the petition, or any of them, should be denied by the landowner, the findings of the court on a hearing on exceptions or answer to the petition, would become part of the record from which an appellate court could determine whether error was committed in approving or refusing to approve the bond.

Argued Feb. 12, 1912. Appeals, Nos. 192 and 193, Jan. T., 1911, by plaintiff from orders of C. P. Schuylkill Co., Nov. T., 1909, Nos. 320 and 321, refusing to affirm bonds in case of Oak Grove Water Company v. Albert Thompson. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to bonds. Before BRUMM, J.

The opinion of the Supreme Court states the case.

*Errors assigned,* were the orders refusing to affirm the bonds.

*John F. Whalen,* for appellant.

*B. W. Cumming, Jr.,* for appellee.

OPINION BY MR. JUSTICE BROWN, March 18, 1912:

These two appeals, to be regarded as writs of certiorari, bring up records in each of which the appellant contends error is disclosed in the refusal of the court below to approve its bond to secure to the appellee pay-

ment of damages for taking his lands for its alleged corporate purposes under its alleged right of eminent domain. The two records are exactly similar, and, as each appeal raises the same question, what is about to be said applies to both. Very much that does not appear on the records has crept into the paper books of both the appellant and appellee, but we can consider no statements in either, even if they be true, that are not supported by the records, to which we are strictly confined in disposing of the appeals. On October 25, 1909, the appellant presented in the court below its bond to the appellee in the sum of $2,500, conditioned for the payment to him of such amount of damages as he might be entitled to recover for the taking of the land described in the bond for the alleged corporate purposes of the appellant. At the same time there was presented what purported to be a notice from the appellant, by its president, directed to the appellee, that, as he had refused to accept the said bond, the same would be presented for approval to the court on October 25, 1909. There was also presented what purported to be proof of service of notice that the bond would be presented for approval. This was in the nature of an affidavit made by one K. C. Wilson, that he had endeavored, but unsuccessfully, to agree with the appellee (apparently for the amount of damages to be paid him, though this was not stated in the affidavit), and, having tendered him a bond, which was not accepted, notice was given to the appellee that it would be presented to the court for approval, as provided by law, on October 25, 1909. On that day the court directed the bond to be left with the prothonotary, and the alleged notice of the intention to file it and the alleged proof of service of such notice were filed with it. An appearance for the appellee was entered de bene esse, and the court made the following order: "And now, to wit: October 25th, 1909, the foregoing bond having been presented in open court, the same is directed to be entered with the prothonotary and Monday, November 1, 1909, at 10

a. m. is fixed for hearing on the approval of the bond, and if any exceptions are made to said bond they shall be filed Thursday next." On November 1, 1909, the time of hearing the application to approve the bond was continued to November 15, 1909. On that day there was a further continuance to November 29, 1909. Subsequently there were seven continuances of the hearing of the application to approve the bond. At whose instance or for what reasons they were granted does not appear. On June 8, 1910, twenty-six exceptions to its approval were filed by the appellee. Most of these require no notice. The material ones were as follows: "1. There is no proof that the bond presented to court was tendered to Albert Thompson by Oak Grove Water Company." "2. There is no proof that any bond was tendered to Albert Thompson by the Oak Grove Water Company." "4. There is no proof that the Oak Grove Water Company and Albert Thompson could not agree upon the amount of damages claimed or could not agree for the compensation proper for the damage done." "8. There is no averment or proof that the Oak Grove Water Company is a Pennsylvania corporation." "9. There is no proof that the Oak Grove Water Company has the power to appropriate land and waters in the jurisdiction of this court." "10. There is no authority conferred on the Oak Grove Water Company by statute or by charter to appropriate the land and water described in said bond." Answers were filed by the appellant, denying the averments set forth in the foregoing exceptions, but, though a full year was allowed to sustain the answers, no attempt was ever made to substantiate them, and on June 12, 1911, the following order was made: "And now, to wit, June 12th, A. D. 1911, there being no proofs before us on any evidence offered by plaintiffs to sustain the facts set forth in their answer to the exceptions, and as our ruling on the exceptions shows that the plaintiffs failed to supply certain requisites necessary to vest jur-

isdiction in the court under their application, we decline at this time to approve the bond."

The appellee was, strictly speaking, correct in the averments set forth in his first, second, fourth and fifth exceptions, for all the appellant relied upon as to the presentation of the bond to the appellee and that he and it could not agree upon the amount of damages claimed, was the affidavit of one K. C. Wilson. Who he was does not appear, and he may not have had any connection whatever with the company. His affidavit merely sets forth that he endeavored to agree with the appellee as to the amount of damages claimed, but was unable to do so, and that he tendered the bond, which was not accepted, and thereupon notice was given the appellee that it would be presented to the court below for approval. From all that appears from Wilson's affidavit, he may have been merely an outsider. But, waiving this, the unanswered averments of the appellee in his eighth, ninth and tenth exceptions clearly stood in the way of the approval of the bond. They were that there was no averment or proof that the appellant was a Pennsylvania corporation; that there was no proof that it had the power to appropriate land and waters in the jurisdiction of the court; and there was a distinct denial of any authority conferred upon it by statute or by charter to appropriate the land and water described in the bond. Before a bond given to secure a landowner for his damages for land taken from him by a corporation, under its right of eminent domain, can be approved, it must affirmatively appear to the court that the company tendering it is vested with such right. It is only by virtue of such power that a corporation can call upon a court to exercise its jurisdiction to approve a bond. In the present case, though given a full year to do so, the appellant failed to submit anything to the court showing that it possessed the right of eminent domain, while, on the other hand, such right was specifically denied by the appellee. The record having been in this state at the

time the court refused to approve the bond, nothing more need be said in sustaining its action.

Though the Act of April 29, 1874, P. L. 73, under which water companies are incorporated and given the right of eminent domain, does not require a formal petition to be presented to the court, asking for the approval of a bond refused by a land owner when tendered to him by the company to secure to him damages for the taking of his property, the proper and better practice is to file such a petition at the time the approval of the bond is asked for: 2 Lewis on Eminent Domain, (3rd Ed.) 969. Such a petition should set forth (1) the corporate power of water company to take the land under its right of eminent domain; (2) an accurate description of the land by metes and bounds, evidenced by an accompanying draft of the same; (3) the failure of the company and of the land owner to agree upon the amount of damages claimed; (4) the tender by the company to the landowner of a bond, with at least two sufficient sureties; (5) the refusal of the land owner to accept the bond, and that written notice was given to him of the time when the same would be presented for filing in court for approval. Such a petition, unanswered, would show not only the court's jurisdiction in the premises, but its duty to approve the bond. If the averments in the petition, or any of them, should be denied by the land owner, the findings of the court on a hearing, on exceptions or answer to the petition, would become part of the record, from which an appellate court could determine whether error was committed in approving or refusing to approve the bond. If such a course had been pursued in the present case, there would be no difficulty in determining whether the court had improperly refused to approve the appellant's bond. As the record stood at the time the approval of the bonds was refused, the court could not have approved them, and both appeals are dismissed with costs.