## Falls Township Authority v. Levitt & Sons, Inc.

*Willard S. Curtin*, for petitioner.

*I. J.* and *D. W. Vanartsdalen* and *Dilworth, Paxon, Kalish & Green*, for respondents.

SATTERTHWAITE, J., July 17, 1952.—In this eminent domain proceeding the Township of Falls Authority has filed a petition for the approval of its bond, precedent to taking possession, under its alleged power to condemn, of a right of way easement across lands of respondent for the purpose of an interceptor sewer line connecting certain lateral and collector sewer lines of the authority within the Township of Falls, Bucks County, Pa., with a sewage treatment plant of the authority in the Township of Bristol of that county. The lands of respondent over which this right of way is desired by the authority are located in the Township of Middletown in that county. The petition alleges, in addition to the above matters, the time and manner of organization of the authority; that the authority has the power of eminent domain; that the authority deems it necessary and essential to acquire the right of way in question, a certified copy of the resolution with respect thereto being attached as an exhibit; that the accredited representative of the authority has un-

successfully attempted to agree with respondent as to the amount of damages for the right of way; that the authority has tendered its bond to respondent as security for such damages, which bond was refused, and that the authority gave written notice to respondent that the bond would be presented to this court for approval on a date specified. Attached to the petition are a certified copy of the resolution of the authority appropriating and condemning the right of way easement in question, descriptions and plans of the right of way over lands of respondent, the bond of the authority, with approved corporate surety, in an unlimited amount to secure the payment of damages by reason of the taking and an affidavit of service of notice of intention to apply in this court on a date specified for the approval of the bond.

Respondent has filed exceptions to the petition, under the authority of such cases as American Transfer Company's Petition, 237 Pa. 241; Oak Grove Water Co. v. Thompson, 235 Pa. 486; and Transcontinental Gas Pipe Line Corp. v. Mercy Hospital of Chester, 76 D. & C. 25, 28, contending that the petition on its face shows that the authority does not have the power of eminent domain under the circumstances set forth therein. Certain formal objections made orally by counsel at the time the petition was originally presented, relating to matters in the execution of the petition and the bond itself, have been corrected by amendment thereto. The fundamental objection, and only real question with which we are concerned in the view we take of the case, is whether or not the authority has the legal power to condemn, for right of way purposes, property located outside the limits of Falls Township, the sole municipality organizing the authority.

The authority was organized under, and is governed and empowered by, the Municipality Authorities Act

of May 2, 1945, P. L. 382, 53 PS §2900z-1 to 2900z-20. Section 4 of this act, 53 PS §2900z-5, defines the nature of the projects which may be undertaken by municipal authorities, including "sewers, sewer systems or parts thereof, sewage treatment works, including works for treating and disposing of industrial waste." Subsection B of section 4 specifies the powers granted to authorities organized under the act, including, inter alia: "(1) To have the power of eminent domain."

Section 11 of the Act of 1945, as amended, 53 PS §2900z-12, provides, in part, as follows:

"The Authority shall have the power to acquire, by purchase or eminent domain proceedings, either the fee or such right, title, interest or easement in such lands, water and water rights as the Authority may deem necessary for any of the purposes mentioned in this Act. . . . The right of eminent domain shall be exercised by the Authority in the manner provided by law for the exercise of such right by municipalities of the same class, as the municipality by which such authority was organized.

"In the case of a joint authority eminent domain shall be exercised by the authority in the same manner as is provided by law for the exercise of such right by municipalities of the same class as the municipality in which the right of eminent domain is to be exercised.

"The right of eminent domain herein conferred by this section may be exercised either within or without the municipality or municipalities."

Respondent urges that, notwithstanding the last paragraph of section 11 as above quoted, the Township of Falls Authority, being the creature of Falls Township, has no greater powers with respect to the right of eminent domain than the municipality which created it; that the last sentence of the first paragraph of section 11 limits and restricts its *power* of eminent

domain to that possessed by its progenitor. It further argues that Falls Township, a township of the second class, has no power to condemn property outside its geographic limits for sewage disposal purposes. Counsel brush aside the last paragraph of section 11 of the Act of 1945 as having no separate force and effect in and of itself, commenting that it is but a mere convenient reference to the fact that some municipal corporations have the right of eminent domain outside their own limits (in which case authorities organized by them would also have the right) while other municipalities do not have such right (and therefore authorities organized by them are not so empowered).

Apparently the basis for this point of view is the premise that the authority is merely the child or instrumentality of the municipality itself, under the authority of such isolated expressions as are set forth in State College Borough Authority v. Pennsylvania Public Utility Commission, 152 Pa. Superior Ct. 363, 369, and in the opinion of the Attorney General under the caption In Re Municipal Authorities, 43 D. & C. 12, 16.

We believe that respondent's position is erroneous, both with respect to its fundamental premise as to the nature of an authority and also as to the construction of the act of assembly in question.

Section 2 of the Municipality Authorities Act of 1945, 53 PS §2900z-2, defines the term "Authority" as meaning "a body politic and corporate, created pursuant to this Act or pursuant to the 'Municipality Authorities Act of 1935' repealed hereby."

It has been consistently held, both under the Act of 1945 and under other legislation involving authorities that an authority is not the creature, agent or representative of the municipality organizing it. For example, in Tranter v. Allegheny County Authority et

al., 316 Pa. 65, 79, the Supreme Court refers to the authority "as the agent created for the purpose *by the State*" (italics supplied), notwithstanding that under the Second Class County Authority Act the authorities therein provided for would not come into being until the county commissioners so declared. In Williams v. Samuel, 332 Pa. 265, 277, the court commented, as to an authority created under the Municipality Authorities Act of 1935, that "the State can authorize its creature, the city, to transfer its sewer system to the authority *created by the State*." (Italics supplied.)

In Lighton et al. v. Abington Township et al., 336 Pa. 345, the following quotation from page 353 is particularly applicable here:

"In the Tranter case, . . . The State authorized the creation of a public corporation, the Allegheny County Authority, and required its agent, the county, upon the creation of the Authority, to transfer to the Authority certain property for purposes which were within the jurisdiction of the State. On the same theory the incorporation of Municipal Authorities has been supported. They are public corporations, being corporate agencies engaged in the administration of civil government. The *state* may modify the part performed by *its* agencies in government *by creating other agencies*, subject always to constitutional limitations." (Italics supplied.)

In Commonwealth ex rel. McCreary v. Major, 343 Pa. 355, it was held that a member of a board of a municipal authority created under the Act of 1935 was a public official by reason of the fact that such an entity is an independent public agency of the Commonwealth, and part of the sovereignty of the State. Similarly, in Evans v. West Norriton Township Municipal Authority, 370 Pa. 150, Justice Bell stated at page 154 as follows:

"A Municipal Authority is defined by the Act as 'a body politic and corporate.' Its members are appointed by elected public officials. It receives a charter from *the Commonwealth of Pennsylvania which grants it certain characteristic attributes* of a corporation. It is authorized by law and by its charter to perform vast private as well as certain limited public functions." (Italics supplied.)

Respondent urges, as sustaining its contention, that the Supreme Court in the Evans case has indicated that the powers of authorities organized under the Act of 1945 must generally be subject to the control and approval of the municipality in which the authority proposes to exercise its functions in order to be constitutional, and therefore the legislation in question should be similarly construed so as to arrive at a constitutional application thereof. We fail to see how that case is authority for any such proposition. The question there involved was whether or not section 4 B(s) of the Act of 1945 was unconstitutional as delegating the power to tax prohibited by article III, sec. 20. This provision of the Act of 1945 authorized assessments, to be entered as liens under the Municipal Lien Law, of the costs of construction of lateral sewers by the authority against properties benefited thereby. A proviso stipulated that no such charge would be a lien unless the authority should have submitted the plan of construction and estimated cost thereof to the municipality in which the project was undertaken and such municipality should have approved the plan and estimated cost. The Supreme Court was confronted with the problem of construing this provision of the act to determine its meaning (which has been, to some extent, clarified by amendment by the Act of September 26, 1951, P. L. 1507). The court held that the act, as construed, was not a violation of the constitutional provison; it did not dele-

gate the taxing power inasmuch as the basis for the assessments, to be valid, must have been approved by the elected municipal officials. The authority was merely the administrative agency through which such assessments might be enforced.

We fail to see how this case is a precedent for the position taken by respondent in the present proceedings. It involved, on the constitutional question, solely the applicability of the prohibition against delegation of the taxing power. The power of eminent domain was neither included in the constitutional provision in question nor involved in the case presented. It must be conceded that the court there adopted the construction of the statutory provision in question so as to permit that statute to stand under the Constitution. Nevertheless, we cannot read that case as deciding or even implying, absent a specific constitutional prohibition, that local municipal control or general limitations imposed by law on municipalities must be read into all delegations of powers to authorities by the legislature in order to render such powers constitutional.

In this connection, reference may properly be made again to Lighton v. Abington Township, supra. There another aspect of the same constitutional provisions of article III, sec. 20, was under consideration, the question of delegation to a special commission, private corporation or association of power to interfere with municipal improvements. The township itself, not an authority organized by it, planned to construct a sewerage system financed by its bond issue, the payment of which was secured by a deed of trust not only pledging the receipts from the system but also authorizing the trustee, upon default in payment, to take over part of the system and operate it. The Supreme Court held this was an unconstitutional arrangement in violation of article III, sec. 20, in view of the possibility of the

trustee taking over the system *of the township*. It expressly recognized, however, on page 354, that such an arrangement by an *authority* would be valid, title to the system not being in the municipality but in the authority which would make the contract with the trustee. The court further commented, at page 354: "The state may modify the part performed by its agencies in government by creating other agencies, subject always to constitutional limitations. If there is any resemblance between (1) the exercise of the power of the state to modify township government by taking part of it from the township and vesting it in a public corporation and (2) by statute, authorizing the municipality to make a contract with a private corporation to take over and operate public property, the fact remains that the state may do the first but is expressly prohibited from doing the second."

The Lighton case is not inconsistent with the Evans case. The implications in the latter that section 4B(*s*) of the Act of 1945 would be unconstitutional if not construed to require municipal approval (and hence control) of the basis of the assessments therein authorized are not decisive of the proposition that *all* powers of the authority must constitutionally be subject to such control. The Lighton and other cases above referred to clearly indicate that, unless prohibited by the Constitution, it is fully competent for the legislature to invest such independent entities with such powers as it may deem necessary for them to carry out the purposes authorized.

There is no constitutional prohibition against the delegation of the power of eminent domain for public purposes. Indeed, article XVI, sec. 8 expressly recognizes this well-established principle when it provides: "Municipal *and other corporations and individuals* invested with the privilege of taking private property for public use shall make just compensation

. . ." (Italics supplied.) Even respondent tacitly admits this by not questioning that an authority organized by a borough, for example, might constitutionally condemn property outside the borough limits for sewerage purposes. Respondent, however, points to the provisions of section 2112 of the Borough Code, 53 PS §14258, requiring notice to landowners outside of the borough before the *borough* adopts the ordinance extending *its* municipal activities beyond its limits, and Lansdale Borough v. Silverman, 20 D. & C. 526, holding that such notice is a condition precedent to the validity of such ordinance, the purpose being to permit the landowner to appear before borough council or otherwise lobby against the ordinance prior to its passage. But we assume that even respondent would admit that the cited case involved only the interpretation and application of the Borough Code; neither it nor the cases relied upon therein decided that such notice was necessary under the Constitution or that the borough lacked the power under the Constitution to condemn outside its boundaries.

We therefore believe that no constitutional questions are involved in the instant case and our consideration of the statutory provisions in issue is confined solely to determining the legislative intent as to the extent of the power of eminent domain conferred upon authorities by the Act of 1945. Respondent contends that the act indicates an intention to limit such power to that enjoyed by the municipality organizing such bodies. As indicated above, with this argument we do not agree.

The very history of the legislation relating to municipal authorities itself demonstrates the incorrectness of respondent's contentions. The argument, in the first place, ignores the fact that the power of eminent domain given to authorities is created, not by the last

sentence of the first paragraph of section 11 of the act, but by section 4B (*l*) and the first sentence of section 11. These provisions, in identical language so far as here material, were included in the original Municipality Authorities Act of June 28, 1935, P. L. 463 (since repealed), and the power so conferred has been neither eliminated nor modified by the several amendments both to the Act of 1935 and to the successor and present Act of 1945.

Secondly, similar observations may be made with respect to the provisions of the last sentence of the first paragraph of section 11 of the Act of 1945, which provides as follows:

"The right of eminent domain shall be exercised by the Authority *in the manner* provided by law for the exercise of such right by municipalities of the same class, as the municipality by which such Authority was organized." (Italics supplied.)

This was the identical language of the last sentence of section 11 of the Act of 1935 as originally adopted. Clearly this relates to procedure only. The right shall be exercised "in the manner" provided by law in the case of municipalities; in other words, the manner or form of proceeding shall be the same as though the right were exercised by the municipality. This provision does not restrict the general grant of power of section 4B (*l*) and the first sentence of section 11; rather it specifies how that power shall be carried out.

In this connection, reference is made to the opinion of Justice Linn in Hencken et ux. v. Bethlehem Municipal Water Authority, 364 Pa. 408, 409, where he indicates that the authority for the procedure in an extra-territorial eminent domain case was section 11 of the Act of 1945 under discussion, although the actual conduct of the litigation was governed by the applicable provisions of the Third Class City Law.

By the Act of May 20, 1937, P. L. 739, the sentence in question was amended, by the addition of the emphasized words, so as to read:

"The right of eminent domain shall be exercised by the Authority in the manner provided by law for the exercise of such right by municipalities of the same class, as the municipality *or one of the municipalities* by which such authority was organized."

This provision remained unchanged throughout the various amendments to the Act of June 28, 1935, P. L. 463, until that act was repealed and replaced by the Municipal Authorities Act of 1945, P. L. 382. Section 11 of the Act of 1945 restored the identical language of the last sentence of the corresponding section in the original 1935 Act and, in place of the ambiguous language added by the 1937 amendment above referred to, included a new paragraph providing as follows:

"In the case of a joint Authority eminent domain shall be exercised by the Authority in the same manner as is provided by law for the exercise of such right by municipalities of the same class as the municipality in which the right of eminent domain is to be exercised."

In other words, this last quoted paragraph of section 11, added by the Act of 1945, was inserted for the obvious purpose of making certain which applicable law of procedure should be invoked where a *joint* authority seeks to exercise its right of eminent domain. This provision was concerned solely with the situation created by the ambiguous language of the 1937 Act, which, in turn, arose only when the authority was organized by more than one municipality.

As an entirely new and separate provision, the 1945 Act inserted the third paragraph of section 11, the one most immediately involved in this proceeding, providing as follows:

"The right of eminent domain herein conferred by this section may be exercised either within or without the municipality or municipalities."

This provision expressly affirmed that authorities in general, without qualification, might exercise the right of eminent domain either within or without the municipality or municipalities organizing them. It contains no restriction, such as respondent would read into it, that the power of eminent domain could be employed only if the municipality organizing the authority itself had the power. This provision was entirely new to the statutory scheme as it existed theretofore and must be presumed to have some independent meaning.

Respondent lays some stress upon the fact that the third paragraph of section 11 refers to the power of eminent domain "herein conferred by this section," arguing that these words would be meaningless if they did not refer to the provisions of the last sentence of the first paragraph of section 11. It contends that the legislature thereby indicated an intention to restrict such power under the last sentence of the first paragraph of section 11 to cases where the municipality organizing the authority had such power. We cannot agree with this contention. The construction we have placed upon the third paragraph of section 11 does not overlook or ignore the words emphasized by respondent; rather, it is obvious that the reference therein is to the power conferred by the first sentence of the first paragraph of section 11, an unqualified grant of power, subject to certain exceptions as to specific instances, not presently involved, in which the power should not be invoked.

In fact, the rule of construction contended for by respondent actually works against it. If the construction of section 11 be as contended, there would be no

purpose in the last paragraph thereof whatsoever. If, as contended, the *power* of eminent domain is derived by authorities under this act solely from the law of the municipality which organized such authority, why should the legislature have inserted, in the 1945 Act, the entirely new provision under discussion? It would be meaningless, inasmuch as an authority organized by a borough, for example, would already have had the power, under the Borough Code, to exercise the right of eminent domain outside the borough limits. We cannot ignore or construe away an entire paragraph of an act of assembly.

In this respect the statutory language involved in the within case is even less favorable to respondent's position then it was to the landowner in Hauser v. Borough of Pottstown, 78 D. & C. 223. The matter before the court in that case was the determination as to whether a borough had the power of eminent domain outside its limits for airport purposes under section 2490 of the Borough Code, 53 PS §14791, which expressly authorized boroughs to acquire land by lease or purchase for such purposes either within or without the borough limits but did *not* expressly authorize or empower boroughs to exercise the power of condemnation therefor. The second paragraph of this section, however, did provide for the manner of assessing damages for lands condemned. The Court of Common Pleas of Montgomery County, in an opinion by President Judge Knight, had no difficulty in overruling the landowner's contention that the borough could acquire such lands only by lease or purchase, holding that the right of eminent domain was to be implied, on the ground that the latter paragraph of section 2490 would otherwise be meaningless and useless. As in the present case, that paragraph had been added, by amendment, as a new provision, subsequent to the enactment of the original legislation.

We conclude, therefore, that the Municipality Authorities Act of 1945, by sections 4B (l) and 11, conferred upon authorities the power of eminent domain both within and without the geographic limitations of the municipalities creating them, and that these provisions are self-sustaining. It is therefore unnecessary to decide whether or not townships of the second class have such power.

The subsidiary question raised by the exceptions in this case, attacking the petition because it fails to set forth a finding that it is impracticable to construct the sewer line in question over public roads, also is out of the case, inasmuch as the basis therefor was a provision of the Second Class Township Code, for which there is no parallel provision in the Municipality Authorities Act of 1945. Reading section 1503 of the Second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §19093-1503, with section 1501 thereof, it may well be (although it is unnecessary for us so to decide at this time) that in condemnation proceedings *by a township* for sewerage purposes, the supervisors must preliminarily exercise their judgment and discretion in determining whether "it is reasonably impracticable" to construct any given part of a sewer system along the public roads, inasmuch as the power of eminent domain conferred upon them for this purpose appears in section 1503, in which this condition precedent also appears.

However, no such condition appears in section 11 of the Municipality Authorities Act. It provides:

"The Authority shall have the power to acquire, by . . . eminent domain proceedings, . . . such right . . . in such lands . . . as the Authority may deem necessary for any of the purposes mentioned in this act: . . ."

Both the petition and the resolution of the authority attached thereto in this case aver that the authority

deems it necessary and essential to appropriate the easement in question across, inter alia, lands of respondent. Beyond that we need not and cannot go in this proceeding. This court should not and will not substitute its judgment for that of the authority; the resolution of the board of the authority as to the necessity for the taking is prima facie valid and determinative of the question: Wilson v. Pittsburgh & Lake Erie Railroad Company, 222 Pa. 541; at least in the absence of fraud or palpable bad faith (of which there is no indication in this case) : Schenck v. Pittsburgh, 364 Pa. 31, 36.

Respondent argues that the authority has tacitly admitted that it is subject to the Second Class Township Code in this petition because it has pleaded inability of the authority to agree with the landowner as to the damages involved and that the necessity for averring such fact in these proceedings arises under the Municipality Authorities Act of 1945 only because it is "provided by law" by the Second Class Township Code. Even if there were any merit to this type of argument, which we do not concede, it is simply answered by pointing out that it is both factually and legally erroneous. Both the case law (Oak Grove Water Company v. Thompson, 235 Pa. 486, 491) and a generally applicable statute (Act of June 7, 1907, P. L. 461, 26 PS §141) require, as a matter of good practice, that such an averment should accompany an application for the approval of the bond in eminent domain cases generally.

We have carefully considered all the ingenious but highly technical objections advanced in this case by respondent and have given them an unusual amount of deliberation in view of the vast numbers of people and the huge sums of public and private funds which are and may be involved, both in the undertakings of the authority in the Fairless Hills development in

Falls Township as well as in the gigantic housing project now under way by respondent, both arising out of the unprecedented increase in population in southeastern Bucks County with the rapidly expanding industrialization thereof. We are satisfied in the knowledge, not only that there is no legal merit in respondent's exceptions in this case, but also that the general public interest will be best served by dismissing them so that the authority may proceed to carry out the functions for which it was organized.

And now, July 17, 1952, exceptions to the bond heretofore filed are hereby dismissed and overruled, and the bond is approved and directed to be filed, this court reserving full jurisdiction in the premises as provided by law with respect to the determination of the damages suffered, or to be suffered, by owner-respondent and such others, if any, as may prove to be in interest by reason of the entry and taking by the Township of Falls Authority.