## Penndel Petition

310

*John Justus Bodley*, for petitioner.

*J. Franklin Hartzel*, for respondents.

BIESTER, P. J., October 10, 1961.—On February 24, 1961, Penndel Municipal Authority, created under the provisions of the Municipality Authorities Act of May 2, 1945, P. L. 382, and its amendments, for the purpose of constructing and operating a sewer disposal system, presented its petition to this court seeking our approval of a bond to secure contemplated damages arising out of the condemnation of certain land of Leah Shore, comprising 15.921 acres, which land is situated in Middletown Township, a municipality adjacent to Penndel Borough, by which the authority was created.

Upon the presentation of such petition, since both the township and the owner, by their respective counsel, opposed the allowance, we refused to immediately approve the bond, but granted a rule upon the town-

ship, and the owner, to show cause why the bond should not be approved. Following the filing of answers to the rule and replies to the new matter contained in the answers, a hearing was held before us.

Respondents oppose approval of the bond for three specific reasons. The first reason asserts that the authority did not comply with the law respecting notice and advertisement of the passage of the resolution in question.

In support of this contention, our attention is directed to section 11 of the Municipality Authorities Act, as amended by the Act of June 12, 1947, P. L. 571, 53 PS §314. It is there provided, inter alia: ". . . The right of eminent domain shall be exercised by the Authority in the manner provided by law for the exercise of such right by municipalities of the same class, as the municipality by which such Authority was organized."

Article XXI, sec. 2112, of The Borough Code of May 4, 1927, P. L. 519, as amended by the Act of July 10, 1947, P. L. 1621, 53 PS §47112, provides in part, as follows:

"No ordinance for any construction of sewers or treatment works beyond the limits of the borough shall be adopted until notice thereof has been given, by publication of the proposed ordinance, for at least four weeks in one newspaper of general circulation published in the borough and if no such newspaper is published in the borough, then in such a newspaper circulating in the borough, and also by serving copies of such proposed ordinance upon all land owners through whose land such sewer is to pass, or on whose lands any treatment works are to be located, at least ten days before final action thereon."

The authority published a notice of a special meeting to be held on February 9, 1961, which advertisement notified persons interested that at that time there would be voted upon a resolution that the sewage treatment

plant and other necessary facilities be located beyond the limits of Penndel Borough and be located in Middletown Township. Notice of this meeting was also given to Mrs. Shore by certified letter dated January 19, 1961, which was apparently delivered to Mrs. Shore on January 21, 1961.

It is obvious that the procedure adopted by the authority was not in precise conformity to that which would be required if a borough were condemning lands outside of its own municipality.

The law is clear that the approval of the bond does not mean that the court passes upon all procedural matters in the carrying out of the condemnation. If we determine that the condemning body has the legal right to appropriate the property in question, and that the security offered satisfies the constitution and statutory requirements that private property should not be taken for public use before just compensation is tendered or secured, the court should approve the bond: 14 Standard Pa. Practice, Eminent Domain Proceedings, §39, page 257. See also Oak Grove Water Company v. Thompson, 235 Pa. 486, 491; Katharine Water Company, 32 Pa. Superior Ct. 94, 97; Wilson v. Pittsburgh & Lake Erie Railroad Co., 34 Pa. Superior Ct. 575; Transcontinental Gas Pipe Line Corp. v. Mercy Hospital of Chester, 76 D. & C. 25, 28.

In Falls Township Authority v. Levitt & Sons, Inc., 84 D. & C. 223, in a similar proceeding, the same objection as to procedure was made and was answered by Judge Satterthwaite, p. 232, in the following language, which we completely adopt:

"Respondent, however, points to the provisions of section 2112 of The Borough Code, 53 PS §14258, requiring notice to landowners outside of the borough before the *borough* adopts the ordinance extending *its* municipal activities beyond its limits, and Lansdale Borough v. Silverman, 20 D. & C. 526, holding that

such notice is a condition precedent to the validity of such ordinance, the purpose being to permit the landowner to appear before borough council or otherwise lobby against the ordinance prior to its passage. But we assume that even respondent would admit that the cited case involved only the interpretation and application of the Borough Code; neither it nor the cases relied upon therein decided that such notice was necessary under the Constitution or that the borough lacked the power under the Constitution to condemn outside its boundaries."

The second objection to our approval of the bond is based upon the proscription contained in section 11 of the Municipality Authorities Act, 53 PS §314, which provides, inter alia: ". . . That no property owned or used by the United States, the Commonwealth of Pennsylvania, any political subdivision thereof, . . . shall be taken under the right of eminent domain." Admittedly the township neither owns the premises involved in fee nor, at the time of the taking, was the land being used by the township. The township contends, however, that, since it is lessee of the premises in question, the term "owner" should be extended to include the township as lessee and for this reason the authority should not be permitted to condemn the land.

We have before us in the record a lease dated February 8, 1961, one day before the passage of the resolution, which leases the premises to the Township of Middletown for a term of five years at a monthly rental of $1. The lease further grants the township the option to purchase the premises for a consideration of $120,000. Then follows this clause: "During the term of this lease and any renewal thereof, lessor shall have the right, by sending written notice by registered mail to lessee, to request lessee to exercise the aforementioned option. If lessee does not, within thirty days after receipt of said notice, exercise the aforesaid option by the means provided in the above paragraph,

then in that event lessor may elect to immediately terminate this lease notwithstanding any other provisions of this lease to the contrary."

It appears quite clear that this lease arrangement was entered into for the express purpose of thwarting the authority in its condemnation proceeding. Not only was the lease entered into one day before the proposed resolution was passed, but the option agreement therein contained was obviously designed to permit the owner to terminate the lease at her pleasure. In order to fix an appropriate amount for the bond, the authority presented two reputable real estate experts, one of whom fixed the valuation of the condemned land at $950 an acre, and the other at $800 an acre. It would appear extremely unlikely that it was anticipated that the township would ever exercise an option to purchase the land at upwards of $7,500 an acre, nor that the owner would lease ground of such value for a nominal rental of $1 a month, except to achieve the purpose here contemplated.

We agree that there are circumstances under which a tenancy is equivalent to ownership under certain statutes, but we think that the present title of the township under its lease falls far short of qualifying it as an owner in this proceeding. If such a subterfuge were permitted, any owner of land proposed to be condemned by an authority and a municipality which was adverse to the condemnation of such land could, by subterfuge and connivance, prevent the condemnation.

The contention by respondents that sureties should join in the bond does have merit. Although it might be argued that, since authorities are controlled by the law governing the municipality which created the authority, and sureties are not required on bonds of a borough, nevertheless, the bond furnished by a borough is supported by the taxing authority of the municipality, whereas the authority has no such power, but

will be financed by a bond issue. In view of the fact that the authority may take immediate possession upon the approval of the bond, it is our conclusion that the protection vouchsafed under our Constitution to individuals whose property is seized under right of eminent domain would not be properly protected by submission of the bond without surety.

We, therefore, make the following

### Order

And now, to wit, October 10, 1961, upon the submission of a bond in the sum of $20,000 in proper form and with corporate surety, the bond shall be approved.